OPINION OF THE COURT
Jones, J.
The Public Service Commission (Commission) has authority to issue orders protecting the confidentiality of trade secrets received in evidence in rate-fixing proceedings notwithstanding the statutory prescription that all proceedings and records of the Commission shall be public.
In the course of hearings being conducted by the Public Service Commission on tariff revisions filed by petitioner New York Telephone Company, certain user parties (intervenors in the present proceeding) proposed to introduce in evidence material gained from a “Migration Study” which had been prepared by the telephone company and had been made available by it to the user parties under a protective agreement. The “Migration Study” contained detailed, year-by-year projections of transfer of the company’s customers from older to newer, more sophisticated types of telephone systems, as well as specifics of the company’s future price plans, schedules of new product introduction, and particular sales tactics, representing confidential commercial information which would be valuable to the utility’s competitors and which petitioner characterizes as trade secrets. When the telephone company requested that a protective order be granted precluding disclosure of the “Migration Study” data to the public (as contrasted with disclosure to the Commission, its hearing officers and the parties to the proceeding), the Administrative Law Judges before whom the hearing was being held denied receipt in evidence of the confidential information pending determination by the Public Service Commission whether it would grant such protective relief. The Commission on August 14,1980 denied the protection sought and directed that the proof, insofar as the hearing officers determined it to be relevant and material, be placed in evidence without measures to preserve confidentiality. When the Administrative Law Judges thereafter concluded that much of the alleged confidential information was relevant and material, peti *218 tioner again sought a protective order from the Commission which, on August 27, 1980, declined to alter its prior denial of such relief. The Commission did however grant an order, effective only through September 30,1980, limiting disclosure of the described material to the Commission, its Administrative Law Judges, the parties to the proceeding, and such additional persons as the Commission might specify, to afford the utility an opportunity to obtain judicial review of the Commission’s refusal to grant a permanent protective order.
On September 5, 1980 the telephone company commenced the present proceeding under CPLR article 78 to annul the determinations of the Commission on August 14 and August 27 to the extent that the Commission directed that the relevant portions of the “Migration Study” should be admitted into evidence without any protective measures to preserve their confidentiality.[1] Special Term dismissed the proceeding, concluding that the Public Service Commission had neither “abused its discretion [n]or acted in an arbitrary or capricious manner in refusing to seal the record” to protect the “Migration Study” material. The Appellate Division unanimously affirmed, but on a different ground, holding that by virtue of subdivision 1 of section 16 of the Public Service Law the Commission is without authority to issue an order protecting trade secrets against public disclosure once the information has been admitted into evidence during the course of a rate-making proceeding.
Although acknowledging in its August 14 order that there might be “circumstances where we would need to protect those rare items of proprietary material whose disclosure would cause injury more significant than secrecy’s effects on the openness of our decisional process”, but noting too that “it would be extraordinary if information in a regulated company’s possession were relevant and material to a Commission proceeding yet also deserving of secrecy”, the Public Service Commission now joins the intervenor Attorney-General in arguing in support of the *219 holding of the Appellate Division, asserting that it does not have power to issue any protective order because subdivision 1 of section 16 of the Public Service Law requires that the testimony and records in a rate-fixing case be public records.[2]
We hold a different view and give no such limiting effect to the statutory provision, failing to find in it any proscription against protection from general public disclosure by appropriate order of the Commission of information put in evidence at hearings held by it which falls within the category of trade secrets.[3] The importance of trade secret protection and the resultant public benefit are well recognized (e.g., Kewanee Oil Co. v Bicron Corp., 416 US 470, 481-482). Numerous decisions in this and other jurisdictions demonstrate the variety of protective means that have been fashioned to maintain the confidentiality of trade secret information that is the subject of litigation (Du Pont Powder Co. v Masland, 244 US 100; Tymko v K-Mart Discount Stores, 75 AD2d 987, mot for lv to app dsmd 51 NY2d 879; Snyder v Parke, Davis & Co., 56 AD2d 536; National Starch Prods, v Polymer Inds., 273 App Div 732). This court has itself on at least two occasions noted the propriety of restricting attendance of the public during portions of a trial at which trade secret proof is to be introduced (Sybron Corp. v Wetzel, 46 NY2d 197, 207; People v Jelke, 308 NY 56, 63, n 2), despite the fundamental precept that trials and judicial proceedings generally shall be open to public view and the mandate of section 4 of the Judiciary Law that “the sittings of every court within this state shall be public” (with exceptions which do not include trade secrets).
For the same reason that section 4 of the Judiciary Law (providing that court sessions shall be public) does not preclude a court’s exclusion of the public when such exclu *220 sion is necessary or appropriate to the protection of confidential trade information, subdivision 1 of section 16 of the Public Service Law (providing that proceedings of the Public Service Commission shall be public records) does not foreclose restriction by the Commission of access to its proceedings when such restriction is necessary or appropriate for protection of similar confidential material. Indeed, absent an express statutory prohibition (of which there is none and as to the validity of which we have no occasion to comment), no rationale is suggested why the Commission should not extend the same evidentiary privileges and protection to trade secrets that a court would in a judicial proceeding (cf. Matter of City Council of City of N. Y. v Goldwater, 284 NY 296, 302; see FCC v Schreiber, 381 US 279, 296). The Commission was therefore not free in the present case to decline to provide any protection for confidentiality to the information taken from petitioner’s “Migration Study” and to be put in evidence at the rate-fixing hearing if in fact such material constituted trade secrets. It not only was not without power but it had an affirmative responsibility to make provision, appropriate to the exercise of its regulatory authority, for the protection of the interest of the utility in any trade secrets which the telephone company had made available to participants in the proceeding. To fail to do so would be arbitrary and capricious and erroneous as a matter of law, subject to being set aside in an article 78 proceeding.
Whether or not a permanent protective order in some form should be granted in the present case cannot now be resolved because there has as yet been no determination whether in fact the “Migration Study” data received in evidence subject to the temporary protective order of August 27, 1980 constitutes trade secrets. The case must therefore be remitted to Supreme Court with directions to remand to the Commission for such determination and, if trade secrets be found to be involved, for formulation by it of an appropriate permanent protective order, the terms of which, if unsatisfactory, would of course be subject to judicial review in another article 78 proceeding.
Pending such action by the Commission on the utility’s application, the temporary protective order (which peti *221 tioner’s counsel advised on oral argument is satisfactory and which the Commission has not indicated is other than a considered order on its part) should be continued in effect.
For the reasons stated, the order of the Appellate Division should be reversed, without costs, the petition granted to the extent of vacating the Commission’s denials of a permanent protective order on August 14, 1980 and August 27, 1980, and the matter remitted to Supreme Court with direction to remand to the Public Service Commission for further proceedings by it in accordance with this opinion, pending which the temporary protective order of August 27, 1980 should be continued in effect.
Chief Judge Cooke and Judges Jasen, Wachtler and Meyer concur; Judges Gabrielli and Fuchsberg taking no part.
Order reversed, without costs, petition granted to the extent of vacating the Commission’s denials of a permanent protective order on August 14, 1980 and August 27, 1980, and matter remitted to Supreme Court, Albany County, with directions to remand to the Public Service Commission for further proceedings in accordance with the opinion herein.

. The temporary protective order issued by the Commission on August 27,1980 has been continued through this litigation by orders of Supreme Court and of the Appellate Division.

. Public Service Law (§ 16, subd 1), provides: “All proceedings of the commission and all documents and records in its possession shall be public records.”

. A useful and widely adopted definition of a trade secret is that which was set out in Restatement of Torts (§757, Comment b): “A trade secret may consist of any formula, pattern, device or compilation of information which is used in one’s business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.”