[673 NYS2d 428]

In the Matter of CAROL TURNER, Appellant, v DEPARTMENT OF FINANCE OF THE CITY OF NEW YORK et al., Respondents.

First Department, May 26, 1998

## APPEARANCES OF COUNSEL

*David Arens* for appellant.

*Edward F.X. Hart* of counsel (*Paul T. Rephen* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for respondents.

## OPINION OF THE COURT

NARDELLI, J.

This is a case that pits the principle of literal interpretation of a statute against the intention of the legislative body that enacted the statute. In such a conflict, the intention of the legislators must govern. "[I]t is generally the rule that the literal meaning of the words used must yield when necessary to give effect to the intention of the Legislature. In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered and given effect, and the literal meanings of words are not to be adhered to or suffered to defeat the general purpose and manifest policy intended to be promoted" (McKinney's Cons Laws of NY, Book 1, Statutes § 111, at 225-226).

Petitioner, a principal in the three hotels named in the petition, had a dispute with the New York City Department of Finance over allegedly overpaid hotel occupancy taxes. Pursuant to the Freedom of Information Law ([FOIL] Public Officers Law art 6), petitioner, in a written request dated July 22, 1992, sought records of the respondent Department of Finance relating to its policies and procedures with respect to the collection of the subject hotel room occupancy taxes. As of February 5, 1993, the respondent, through its Records Access Officer, turned over 1,701 pages of documents. However, the agency declined to turn over a total of 157 pages, claiming that 24 pages were exempt intra-agency material, that 123 pages were subject to attorney-client and/or attorney work product privilege and that 10 pages were exempt under the tax secrecy provision. Petitioner appealed that determination within the agency, which sustained the partial denial of her request. Thereafter, the petitioner brought this proceeding in the Supreme Court. However, there, for the first time, instead of disputing the classification of the 157 pages pursuant to the New York State Public Officers Law (FOIL), she contended that the material was discoverable under provisions of the New York City Charter. The Supreme Court dismissed the petition, finding that the material requested was exempt from

disclosure pursuant to both the Freedom of Information Law and the relevant sections of the New York City Charter. While we sustain this finding, we nevertheless reverse the dismissal of the petition solely to allow the Supreme Court to examine the disputed documents in camera to determine whether the respondent's grounds for exemption pursuant to the provisions of the Freedom of Information Law are justified.

In this case of first impression, the petitioner claims that the disparity between the current State-wide Freedom of Information Law and the broader disclosure provisions contained in City Charter sections 1058 and 1059 gives her the right to the broader disclosure allowable under the literal language of the latter provision.

Public Officers Law § 87 (2) exempts attorney-client communications that are confidential under CPLR 4503 (a) and attorney work product under CPLR 3101 (c) in paragraph (a), and exempts intra-agency predecisional material in paragraph (g). On the other hand, New York City Charter § 1058 provides that: "The heads of all administrations and departments, except the police and law departments, and the chiefs of each and every division or bureau thereof, and all borough presidents shall, with reasonable promptness, furnish to any taxpayer desiring the same, a true and certified copy of *any* book, account or paper kept by such administration, department, bureau or office" (emphasis added). Likewise, section 1059 provides that: "*All* books, accounts and papers in the office of any borough president or any division or bureau thereof, or in any city administration or department or any division or bureau thereof, except the police and law departments, shall at all times be open to the inspection of any taxpayer" (emphasis added).

While the petitioner apparently now concedes that FOIL does provide for exemption for certain documents, she contends that it does not preempt the broader disclosure provisions of the City Charter, since the Legislature, by enacting Public Officers Law § 89 (6), permits citizens of the State and City the right to *greater* disclosure as long as such broader disclosure is not inconsistent with the State law. However, this approach shows the unintended consequences in certain cases that may result from a "strict construction" of legislation, i.e., a literal application of every word in the statute or provision as written.

These City Charter provisions and similar laws have always been construed to deny access to records where it would not be in the public interest to disclose them. (*People ex rel. Woodill v*

*Fosdick*, 141 App Div 450; *People v Sumpter*, 75 Misc 2d 55; *Matter of Costello*, NYLJ, Nov. 4, 1938, at 1486, col 4 [Sup Ct, NY County].) Since the passage of the FOIL provisions in the Public Officers Law, the exemptions set forth can fairly be seen as the legislative "codification" of the case law construction of the scope of the discovery, i.e., when it is in the public interest to deny access to records.

These City Charter provisions are derivatives of pre-existing laws, which while broadly worded, have never been interpreted to require disclosure of all records and documents regardless of any objection the City agency might raise. They were enacted over 100 years ago (L 1873, ch 335, § 107), and although renumbered by the Charter Revision Commission in 1989 (from §§ 1113, 1114), remained substantially unchanged. In many respects, they are *less* expansive than the standards of FOIL. Thus, the Charter sections provide for a "taxpayer" to receive information while the State law grants rights to "the public." Also, sections 1058 and 1059 permit access to any "book, account or paper", while the State Freedom of Information Law expressly grants access to "records" and "record" is expressly defined as "any information kept, held, filed, produced or reproduced by, with or for an agency * * * in any physical form whatsoever including * * * photos * * * microfilms, computer tapes or discs" (Public Officers Law § 86 [4]).

In any event, the City Charter sections have *always* been interpreted to provide for limitations on the books and papers that must be produced. Thus, this Court in 1910 found that the purpose of the same City Charter provision (albeit differently numbered) and section 51 (then and now) of the General Municipal Law, which gave taxpayers the right to be furnished *any* book or paper and to inspect *all* books and papers, "can be well attained without undertaking to give to them a forced and strained construction" (*People ex rel. Woodill v Fosdick, supra,* at 454). This presaged the more recent holding of the Court of Appeals in dealing with an interpretation of the same section 51 of the General Municipal Law (establishing general principles for access to public records) that would lead to disclosure of requested documents notwithstanding the exceptions cited in FOIL. The Court held: "Such a result would nullify the FOIL exemptions, which the Legislature—presumably aware of General Municipal Law § 51 at the time it enacted FOIL—could not have intended. To give effect to both statutes, the FOIL exemptions must be read as having engrafted, as a matter of public policy, certain limitations on the disclosure of

otherwise accessible records." (*Matter of Xerox Corp. v Town of Webster*, 65 NY2d 131, 132.)

Likewise, the history of the provisions of the City Charter giving taxpayers access to books and papers shows that indiscriminate inspection of any and all papers was not intended by the provisions, and release of any papers contrary to the public interest was precluded. While petitioner argues against any unexpressed exceptions to the Charter provisions on the ground that the local law would have expressly set forth any governmental privileges, attorney's privilege or work product, or even public interest exceptions, " '[i]n expounding a statute, we must * * * look to the provisions of the whole law, and to its object and policy' [citations omitted]" (*Philbrook v Glodgett*, 421 US 707, 713). Even Justice Scalia, a prime proponent of the "plain meaning" interpretation of statutes, has noted that, at times, a literal interpretation of a statute would produce a "bizarre" result (*Green v Bock Laundry Mach. Co.*, 490 US 504, 527-530 [Scalia, J., concurring]).

In enacting FOIL, the Legislature has codified and clarified what the exemptions protecting the public interest entail. Accordingly, "the FOIL exemptions must be read as having engrafted, as a matter of public policy, certain limitations on the disclosure of otherwise accessible records" (*Matter of Xerox Corp. v Town of Webster, supra*, at 132).

However, we note that the petitioner sought to have the 157 pages of material that were not disclosed be produced for in camera inspection by the court. This request was warranted to determine whether the materials withheld were, indeed, exempt pursuant to Public Officers Law § 87 (2) (a) or (g), and we reverse solely to provide for such inspection.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered on or about February 18, 1994, which dismissed the CPLR article 78 proceeding herein, seeking to annul respondents' determination, dated May 21, 1993, partially denying petitioner's request for certain Department of Finance records, should be reversed, on the law and the facts, without costs or disbursements, solely to the extent of remanding the proceeding to the Supreme Court for an in camera review of the records in issue, to determine whether exemptions to disclosure are applicable herein.

SULLIVAN, J. P., ROSENBERGER, WILLIAMS and TOM, JJ., concur.

Order, Supreme Court, New York County, entered on or about February 18, 1994, which dismissed the subject CPLR

article 78 proceeding, reversed, on the law and the facts, without costs or disbursements, solely to the extent of remanding the proceeding to the Supreme Court for an in camera review of the records in issue, to determine whether exemptions to disclosure are applicable.