■ In the Matter of MARTY MARKOWITZ, as Brooklyn Borough President, Respondent, v GREGORY V. SERIO, as Superintendent of the State of New York Insurance Department, Appellant, and FARMERS NEW CENTURY INSURANCE COMPANY et al., Intervenors-Appellants, et al., Intervenor-Respondent. [833 NYS2d 444]—

Order and judgment (one paper), Supreme Court, New York County (Doris Ling-Cohan, J.), entered January 25, 2006, which granted the CPLR article 78 petition to the extent of annulling the determinations of respondent Superintendent of the Insurance Department, dated August 9 and October 18, 2004, denying petitioner's appeals of the denial of his Freedom of Information Law (FOIL) requests, and directing respondent to comply with such requests, unanimously reversed, on the law, without costs, respondent's determinations reinstated and confirmed, the petition denied and the proceeding dismissed.

Petitioner, the President of the Borough of Brooklyn, concerned about "redlining" in the insurance industry, commenced this article 78 proceeding in response to the New York State Insurance Department's denial of his FOIL requests for the disclosure of annual reports insurers are required to file

with the Department pursuant to 11 NYCRR 218.7. These annual reports, which facilitate the Department's enforcement of the statutory prohibition of redlining (*see* Insurance Law § 3429), list insurance policies that were issued, renewed, not renewed, or cancelled (except for nonpayment of premium) within each ZIP code, as well as any applications for which the company refused to issue a policy (*see* 11 NYCRR 218.7 [b], [d]). Supreme Court granted the petition based on its view that the information in these reports (the ZIP code reports) was already publicly available and that its disclosure would not cause substantial competitive harm. For the reasons discussed below, we now reverse and reinstate the Department's determinations, which properly exercised the Department's power under FOIL to deny access to records that "are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise" (Public Officers Law § 87 [2] [d]).

We first note that the Department's regulation providing that the ZIP code reports are "public record[s]" (11 NYCRR 218.7 [d]) does not prevent the Department from denying access to such material pursuant to an applicable FOIL exemption (*see Matter of Xerox Corp. v Town of Webster*, 65 NY2d 131, 132 [1985]; *Matter of New York Tel. Co. v Public Serv. Commn.*, 56 NY2d 213, 219-220 [1982]; *Matter of Turner v Department of Fin. of City of N.Y.*, 242 AD2d 146, 149-150 [1998]). Although the Department opined in 1994 that the ZIP code reports would be subject to FOIL disclosure, the Department reversed this position in 2000. Since the Department fully acknowledged its change of position and explained the reason for it—namely, the Department's receipt of additional information detailing the competitive harm insurers would face if the reports were disclosed—it cannot be said that the change of position was arbitrary or capricious (*see Matter of Lantry v State of New York*, 6 NY3d 49, 58-59 [2005]).

The Department's determination that the ZIP code reports are exempt from disclosure under the above-quoted portion of Public Officers Law § 87 (2) (d) is reasonably supported by the record and, therefore, should have been sustained. An insurer's market share and growth trend in each ZIP code can be determined from the information in the reports. Thus, another company could use the reports to target its competitive efforts in areas where the reporting insurer is most vulnerable while avoiding areas where that insurer is strongest. The Department's insurance experts reasonably concluded that these cir-

cumstances established a sufficient likelihood of substantial competitive injury to justify application of the exemption (see *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 NY2d 410, 421 [1995]). Supreme Court's suggestion that the competitive injury to an insurer from the disclosure of its ZIP code report will be cancelled out by the benefit it may enjoy from the disclosure of its competitors' reports must be rejected, as the record affords no basis for concluding that each insurer would face the same degree of harm. While application of the exemption also requires that the information not be readily available from alternative sources (*id*. at 420), petitioner concedes that he has no way to obtain the information in the ZIP code reports except by requesting it from the Department.* Even if it might be possible in theory for a competitor to reconstruct the market share and growth data in the reports by conducting a survey of the hundreds of thousands of households in Brooklyn, the expense of such a survey renders it impractical, and the resulting data still would not be as complete or accurate as that in the reports. Providing such valuable information for the nominal price of the fee payable for responding to a FOIL request would be a "windfall" to competitors of a reporting insurer, and the Department properly acted to avoid this result (*id*. at 421). Concur—Tom, J.P., Friedman, Sullivan, Nardelli and Catterson, JJ.

---

* To the extent Supreme Court granted the petition based on the view that the information the reports provide about market share and growth trend in each ZIP code can be gleaned from the yellow pages or the Internet, that view has no support in the record. We note, however, that the intervening insurance companies have indicated that they have no objection to releasing the portion of the reports showing the number of agents in a particular ZIP code.