[893 NE2d 110, 862 NYS2d 833]

In the Matter of MARTY MARKOWITZ, as Brooklyn Borough President, Appellant, v GREGORY V. SERIO, as Superintendent of the State of New York Insurance Department, Respondent, and FARMERS NEW CENTURY INSURANCE COMPANY et al., Intervenors-Respondents.

Argued May 28, 2008; decided June 26, 2008

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Drake Colley, Edward F.X. Hart, Alan H. Kleinman* and *Tahirih M. Sadrieh* of counsel), for appellant. I. The Insurance Department's own rule requires it to disclose the Regulation 90 filings. (*Matter of Frick v Bahou,* 56 NY2d 777; *Matter of Gilman v New York State Div. of Hous. & Community Renewal,* 99 NY2d 144; *Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health,* 5 NY3d 499; *Matter of Duflo Spray-Chemical v Jorling,* 153 AD2d 244; *Matter of Trager v Kampe,* 287 AD2d 643, 99 NY2d 361; *Matter of Goldstein v New York State Indus. Bd. of Appeals,* 292 AD2d 706; *Matter of New York Tel. Co. v Public Serv. Commn.,* 56 NY2d 213; *Matter of Xerox Corp. v Town of Webster,* 65 NY2d 131; *Matter of Turner v Department of Fin. of City of N.Y.,* 242 AD2d 146; *Matter of Law Enforcement Officers Union, Dist. Council 82, AFSCME, AFL-CIO v State of New York,* 229 AD2d 286.) II. The record fails to show that the substantial competitive injury exception to the Freedom of Information Law applies to regulatory information submitted by all members of an industry where the only risk, borne by all members of the industry, is that some or all members of the industry might have better informed marketing. (*Matter of Mantica v New York State Dept. of Health,* 94 NY2d 58; *Matter of Hanig v State of N.Y. Dept. of Motor Vehs.,* 79 NY2d 106; *Matter of Capital Newspapers Div. of Hearst Corp. v Burns,* 67 NY2d 562; *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale,* 87 NY2d 410; *McDonnell Douglas Corp. v United States Dept. of Air Force,* 375 F3d 1182; *Public Citizen Health Research Group v Food &*

*Drug Admin.,* 185 F3d 898; *GC Micro Corp. v Defense Logistics Agency,* 33 F3d 1109; *Matter of Verizon N.Y., Inc. v Bradbury,* 40 AD3d 1113; *Matter of Bahnken v New York City Fire Dept.,* 17 AD3d 228, 6 NY3d 701; *Matter of Sunset Energy Fleet v New York State Dept. of Envtl. Conservation,* 285 AD2d 865.) III. A proper balancing of the public's interest in disclosure versus the insurers' interest in confidentiality must result in disclosure of the Regulation 90 materials. (*Matter of Capital Newspapers Div. of Hearst Corp. v Burns,* 67 NY2d 562; *Matter of New York Times Co. v City of N.Y. Fire Dept.,* 4 NY3d 477; *Matter of Newsday, Inc. v State Dept. of Transp.,* 5 NY3d 84; *GC Micro Corp. v Defense Logistics Agency,* 33 F3d 1109; *National Parks & Conservation Assn. v Morton,* 498 F2d 765; *Matter of M. Farbman & Sons v New York City Health & Hosps. Corp.,* 62 NY2d 75; *Matter of Fink v Lefkowitz,* 47 NY2d 567; *Matter of Washington Post Co. v New York State Ins. Dept.,* 61 NY2d 557.)

*Andrew M. Cuomo, Attorney General,* New York City (*Benjamin N. Gutman, Barbara D. Underwood* and *Cecelia C. Chang* of counsel), for respondent. I. The regulation making each redlining report a "public record" preserves the Insurance Department's ability to invoke exemptions from disclosure under the Freedom of Information Law. (*Matter of New York Tel. Co. v Public Serv. Commn.,* 56 NY2d 213; *Matter of Xerox Corp. v Town of Webster,* 65 NY2d 131; *Matter of Washington Post Co. v New York State Ins. Dept.,* 61 NY2d 557; *Matter of Goldstein v New York State Indus. Bd. of Appeals,* 292 AD2d 706; *Matter of Blossom View Nursing Home v Novello,* 4 NY3d 581; *Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Matter of Turner v Department of Fin. of City of N.Y.,* 242 AD2d 146; *Matter of Elcor Health Servs. v Novello,* 100 NY2d 273; *Matter of Lantry v State of New York,* 6 NY3d 49.) II. The Insurance Department properly concluded that disclosing insurers' most recent redlining reports would cause substantial competitive harm to those insurers. (*Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Matter of New York State Elec. & Gas Corp. v New York State Energy Planning Bd.,* 221 AD2d 121; *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale,* 87 NY2d 410; *Lion Raisins v United States Dept. of Agric.,* 354 F3d 1072; *Center For Pub. Integrity v Federal Communications Commn.,* 505 F Supp 2d 106; *Matter of Capital Newspapers Div. of Hearst Corp. v Burns,* 67 NY2d 562; *Matter of Short v Board of Mgrs. of Nassau County Med. Ctr.,* 57 NY2d 399; *Flacke v Onondaga Landfill Sys.,* 69 NY2d 355.)

*Chadbourne & Parke LLP,* New York City (*Richard G. Liskov* of counsel), and *Dewey & LeBoeuf LLP* (*Ellen M. Dunn* and *Kelly H. Tsai* of counsel) for intervenors-respondents. I. The ZIP code data appellant requested fall squarely within the statutory exemption for records which if disclosed, would cause substantial competitive injury. (*Matter of Newsday, Inc. v Empire State Dev. Corp.,* 98 NY2d 359; *Matter of Capital Newspapers Div. of Hearst Corp. v Burns,* 67 NY2d 562; *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale,* 87 NY2d 410; *Matter of Passino v Jefferson-Lewis,* 277 AD2d 1028, 96 NY2d 709; *Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp.,* 277 AD2d 782, 96 NY2d 708; *Matter of New York State Elec. & Gas Corp. v New York State Energy Planning Bd.,* 221 AD2d 121; *Worthington Compressors, Inc. v Costle,* 662 F2d 45; *Gulf & W. Indus., Inc. v United States,* 615 F2d 527; *Center For Pub. Integrity v Federal Communications Commn.,* 505 F Supp 2d 106; *National Parks & Conservation Assn. v Morton,* 498 F2d 765.) II. Section 87 (2) of the Public Officers Law also exempts trade secrets from disclosure, which is an additional basis for affirming the Appellate Division's order. (*People ex rel. Matthews v New York State Div. of Parole,* 95 NY2d 640; *Matter of Couch v Perales,* 78 NY2d 595; *Matter of New York Tel. Co. v Public Serv. Commn.,* 56 NY2d 213; *Integrated Cash Mgt. Servs., Inc. v Digital Transactions, Inc.,* 920 F2d 171; *Public Citizen Health Research Group v Food & Drug Admin.,* 704 F2d 1280; *Garvin GuyButler Corp. v Cowen & Co.,* 155 Misc 2d 39; *Matter of Sunset Energy Fleet v New York State Dept. of Envtl. Conservation,* 285 AD2d 865; *Stanley Tulchin Assoc. v Vignola,* 186 AD2d 183.) III. The Insurance Department properly interpreted Regulation 90 in harmony with both the entire Freedom of Information Law statute and Insurance Department Regulation 71 governing public access to Department records. (*Matter of Fink v Lefkowitz,* 47 NY2d 567; *Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale,* 87 NY2d 410; *Matter of Xerox Corp. v Town of Webster,* 65 NY2d 131; *Matter of New York Tel. Co. v Public Serv. Commn.,* 56 NY2d 213; *Matter of ATM One v Landaverde,* 2 NY3d 472; *Matter of Gould v New York City Police Dept.,* 89 NY2d 267; *Matter of Goldstein v New York State Indus. Bd. of Appeals,* 292 AD2d 706; *Matter of Frick v Bahou,* 56 NY2d 777.)

*Melito & Adolfsen P.C.,* New York City (*S. Dwight Stephens* of counsel), and *Wiley Rein LLP,* Washington, D.C. (*Craig A. Berrington* and *Gary P. Seligman* of counsel), for American Insur-

ance Association and others, amici curiae. I. Regulation 90 does not preclude the Insurance Department's considered application of Freedom of Information Law exemptions. (*Matter of New York Tel. Co. v Public Serv. Commn.*, 56 NY2d 213; *Matter of Goldstein v New York State Indus. Bd. of Appeals*, 292 AD2d 706.) II. The record overwhelmingly demonstrates the likelihood of substantial competitive injury faced by insurers that would result from contemporaneous disclosure of the ZIP code reports. (*Matter of Encore Coll. Bookstores v Auxiliary Serv. Corp. of State Univ. of N.Y. at Farmingdale*, 87 NY2d 410; *Matter of Gould v New York City Police Dept.*, 89 NY2d 267; *Matter of Glens Falls Newspapers v Counties of Warren & Washington Indus. Dev. Agency*, 257 AD2d 948; *National Parks & Conservation Assn. v Kleppe*, 547 F2d 673; *Public Citizen Health Research Group v Food & Drug Admin.*, 704 F2d 1280; *Matter of Siegel, Fenchel & Peddy v Central Pine Barrens Joint Planning & Policy Commn.*, 251 AD2d 670; *Matter of Passino v Jefferson-Lewis*, 277 AD2d 1028; *Matter of Belth v Insurance Dept. of State of N.Y.*, 95 Misc 2d 18; *Center For Pub. Integrity v Federal Communications Commn.*, 505 F Supp 2d 106; *Matter of Troy Sand & Gravel Co. v New York State Dept. of Transp.*, 277 AD2d 782.) III. Delayed disclosure of the ZIP code reports appropriately balances the competing interests as required by Freedom of Information Law. (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854; *Makastchian v Oxford Health Plans*, 281 AD2d 197; *Huskission v Sentry Ins.*, 123 AD2d 832; *Kenney v Kemper Natl. Ins. Cos.*, 133 F3d 907; *Matter of Fink v Lefkowitz*, 47 NY2d 567; *Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477; *Matter of Newsday, Inc. v State Dept. of Transp.*, 5 NY3d 84; *Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557; *Matter of Gould v New York City Police Dept.*, 89 NY2d 267; *Department of Defense v FLRA*, 510 US 487.)

## OPINION OF THE COURT

Pigott, J.

"Redlining," as the term is used in the insurance industry, is an insurer's refusal to issue or renew, or its cancellation of, a policy premised exclusively on the geographic location of the risk. Concerned that auto insurers were engaging in that practice, Marty Markowitz, Brooklyn Borough President and petitioner in this proceeding, filed two Freedom of Information Law (FOIL) requests with the State Insurance Department

seeking information "for each Kings County zip code, including, by carrier, the number of voluntary [automobile] policies issued, renewed, cancelled (other than for non-payment of premium) or nonrenewed." Markowitz claimed that such zip code reports (commonly referred to as Regulation 90 reports) were available pursuant to 11 NYCRR 218.7 (d), an insurance regulation which states that such reports "shall be public record."

The Department provided Markowitz with data relative to the total number of auto policies in force in New York in each county from 1999 through 2002, but refused to release any data generated after 1997 demarcating the number of policies in force broken down, by carrier, for each Kings County zip code. This refusal was based on the Department's contention that Regulation 90 reports are exempt from disclosure or release under FOIL because their contents constitute either trade secrets or records that, if disclosed, "would cause substantial injury to the competitive position" of insurers (Public Officers Law § 87 [2] [d]). The Department advised Markowitz that the reports would be disclosed, but only after six years.

On December 3, 2004, after exhausting his administrative remedies relative to the denials of both FOIL requests, Markowitz commenced this CPLR article 78 proceeding against respondent Gregory V. Serio, Superintendent of the Insurance Department. The petition seeks an order and judgment annulling, as arbitrary and capricious, the Superintendent's determinations that the Regulation 90 reports are subject to a FOIL exemption, and ordering the Superintendent to produce the reports broken down by zip code. The Department answered asserting that its refusal to release the reports was neither arbitrary nor capricious and that its decision was reasonable and consistent with lawful procedure.

Markowitz and the Superintendent entered into a stipulation permitting several interested insurers to intervene in the proceeding.* Those insurers submitted affidavits in support of their claims that the reports sought by Markowitz constituted confidential information, the release of which would result in substantial competitive harm.

Supreme Court granted the petition, holding that Regulation 90 expressly mandated public disclosure of the reports and that

---

* The intervenor insurers are Farmers New Century Insurance Company, State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Insurance Company, and Chubb & Son.

the Department failed to meet its burden of demonstrating that the Regulation 90 filings qualified under a FOIL exemption. The Appellate Division reversed and reinstated the Department's administrative determinations, noting that although the Department had decided in 1994 that the Regulation 90 reports were public records as the regulation clearly stated, they were nevertheless subject to FOIL disclosure and its reversal of position in 2000 was neither arbitrary nor capricious because the Department had relied on additional evidence from insurers that the disclosure of such information would result in competitive harm to them (39 AD3d 247, 248 [1st Dept 2007]). The Appellate Division further held that the Department's decision to exempt the reports on the ground that their release would result in substantial competitive injury was reasonable (*id.* at 248-249). This Court granted leave to appeal and we now reverse.

The Legislature enacted Insurance Law § 3429 to proscribe insurers from declining to issue or renew, or from cancelling, certain types of auto insurance "based solely on the geographical location of the risk" (Insurance Law § 3429 [a] [2]). That law directs the Superintendent to promulgate regulations establishing "procedures with respect to notification to insureds of the insurer's specific reason or reasons for refusal to issue or renew or for cancellation" of auto insurance policies (Insurance Law § 3429 [b]).

To that end, the Superintendent promulgated 11 NYCRR 218.7 (d), which provides that Regulation 90 reports must be filed annually "in a format . . . prescribed by the superintendent" and that "every such report *shall be public record*" (emphasis supplied). Contrary to Markowitz's contention, however, the "public record" language does not negate an insurer's right to assert that some information required to be included in the reports is exempt from disclosure under FOIL. Rather, as the Department has reasonably concluded, such language suggests that, although Regulation 90 reports are submitted by a private entity at the behest of the Department, they are subject to public disclosure unless the insurer asserts that a FOIL exemption applies and is able to sustain its burden of establishing nondisclosure. This interpretation is consistent with this Court's construction of the "public records" language in the context of FOIL exemptions (*see e.g. Matter of Xerox Corp. v Town of Webster*, 65 NY2d 131, 132 [1985]; *Matter of New York Tel. Co. v Public Serv. Commn.*, 56 NY2d 213, 219-220 [1982]). Indeed, this Court has held that "the FOIL exemp-

tions must be read as having engrafted, as a matter of public policy, certain limitations on the disclosure of otherwise accessible records" (*Matter of Xerox Corp.*, 65 NY2d at 132). Accordingly, the Department's interpretation that 11 NYCRR 218.7 (d) does not deprive insurers of their right to contest the disclosure of Regulation 90 reports is neither irrational nor unreasonable and is "entitled to deference" (*Matter of Gaines v New York State Div. of Hous. & Community Renewal*, 90 NY2d 545, 549 [1997]).

Further evidence of the reasonableness of the Department's interpretation of 11 NYCRR 218.7 (d) is found at 11 NYCRR part 241 (Regulation 71), which provides a regulatory framework concerning requests for, and the release of, Department records. For instance, 11 NYCRR 241.3 (a) states that "[e]xcept as otherwise provided by the Insurance Law, section 87 (2) of the Public Officers Law, or other provisions of law, all records produced [by the Department] shall be available for public inspection and copying," thereby evidencing that FOIL exemptions are potentially applicable to all Department records, even those filed pursuant to Regulation 90. Moreover, 11 NYCRR 241.6 (a) explicitly permits one "who submits any information to the [D]epartment" to "request that the [D]epartment except such information from disclosure under" Public Officers Law § 87 (2) (d). Indeed, several of the insurers here have done so in the past when filing their annual Regulation 90 reports. Therefore, it is apparent that the Department's interpretation of 11 NYCRR 218.7 (d) reconciles, and gives effect to, the key disclosure components of Regulations 90 and 71. As such, while the "public record" language indicates that the Regulation 90 reports are subject to disclosure, an insurer retains the right to assert and attempt to prove that they fall within an applicable FOIL exemption.

The Department and insurers argue that the applicable FOIL exemption here is Public Officers Law § 87 (2) (d), which states that the Department "may deny access to records or portions thereof that . . . are trade secrets or are submitted . . . by a commercial enterprise . . . and which if disclosed would cause substantial injury to the competitive position of the subject enterprise." As the parties seeking the exemption, the Department and insurers are charged with the burden of proving their entitlement to it (*see* Public Officers Law § 89 [4] [b]; [5] [e]), meaning that they must demonstrate that the reports " 'fall[ ] squarely within a FOIL exemption by articulating a particular-

ized and specific justification for denying access' " (*Matter of Data Tree, LLC v Romaine*, 9 NY3d 454, 462-463 [2007], quoting *Matter of Capital Newspapers Div. of Hearst Corp. v Burns*, 67 NY2d 562, 566 [1986]). Because the overall purpose of FOIL is to ensure that the public is afforded greater access to governmental records, FOIL exemptions are interpreted narrowly (*see Matter of Washington Post Co. v New York State Ins. Dept.*, 61 NY2d 557, 564 [1984]). To meet its burden, the party seeking exemption must present specific, persuasive evidence that disclosure will cause it to suffer a competitive injury; it cannot merely rest on a speculative conclusion that disclosure might potentially cause harm.

Here, the Department and insurers have failed to meet this burden. The evidence suggesting they will suffer a competitive disadvantage is theoretical at best. The insurers' key argument is that if they are forced to reveal zip codes of areas where relatively few policies are issued, competitors could use this information to exploit an insurer's geographic weak spot. It has not been shown that zip code data, without more, would necessarily put the insurer at a competitive disadvantage. Because neither the Department nor insurers have met their burden of justifying the exemption of the reports under Public Officers Law § 87 (2) (d) (*see Matter of Washington Post Co.*, 61 NY2d at 567), the order of the Appellate Division should be reversed, with costs, and the order and judgment of Supreme Court reinstated.

SMITH, J. (concurring). The majority concludes that Regulation 90 reports are available to the public only if the Freedom of Information Law (FOIL) makes them so. It also concludes that the insurers have failed to show that the reports are exempt from FOIL.

I disagree with both conclusions. I think that Regulation 90, by its own force, makes the reports "public record." But if I were to consider the FOIL issue, I would find that the insurers had made an ample showing that disclosure of the records "would cause substantial injury to [their] competitive position" within the meaning of Public Officers Law § 87 (2) (d). Ironically, I end up agreeing with the majority's result—but only because the majority's two errors, as they affect this case, cancel each other out.

I

Regulation 90 requires insurers to submit certain reports and says: "every such report shall be public record" (11 NYCRR

218.7 [d]). The majority holds that this means only that the records are public unless a FOIL exemption applies. If that is all it means, the authors of the regulation were wasting their time writing the words, because all records of state agencies are public unless a FOIL exemption applies. But "public record" and "subject to FOIL" do not mean the same thing.

A public record, in ordinary speech, refers to a record that any member of the public can look at and copy. Deeds on file at the county clerk's office are public records; so are the pleadings filed in most litigations. A clerk who is the custodian of public records will show them to anyone who walks into his or her office—or, if the office is technologically advanced, the documents may be available online to anyone with a computer. This is very different from documents subject to FOIL—as to which members of the public may only submit a FOIL request, which will be dealt with, often in cumbersome and time-consuming fashion, by the official assigned by the agency to deal with such things.

The majority cites *Matter of Xerox Corp. v Town of Webster* (65 NY2d 131 [1985]) and *Matter of New York Tel. Co. v Public Serv. Commn.* (56 NY2d 213 [1982]) for the proposition that "public records" and "subject to FOIL" have the same meaning. That is not what these cases hold. *Xerox* interpreted General Municipal Law § 51, a statute enacted before FOIL, which declared a broad category of documents to be "public records." We held that, since the Legislature was "presumably aware of General Municipal Law § 51 at the time it enacted FOIL," the later statute "must be read as having engrafted . . . certain limitations" on the earlier one (65 NY2d at 132). *New York Tel. Co.* involved a statute saying that all proceedings, documents and records of the Public Service Commission "shall be public records" (Public Service Law § 16 [1]). We held that, while the proceedings of the Commission are generally public, the statute does not prohibit the Commission from making exceptions for evidence "which falls within the category of trade secrets"— just as a court, whose proceedings are generally public, might put some sensitive information under seal (56 NY2d at 219). *New York Tel. Co.* says nothing about FOIL.

*Xerox* and *New York Tel. Co.* stand for the proposition that, where a broad category of material is declared to be "public record," exceptions may be made, based on FOIL exemptions or simply on public policy. That proposition has no relevance to this case, for Regulation 90 establishes as "public record" not a

broad category to which the insurers ask for an exception but the precise documents that they want to keep confidential for six years: reports showing insurers' agents, brokers, policies and applications broken down by zip code. The insurers are seeking not an exception to the "public record" requirement but the virtual nullification of it.

I would hold that reports under Regulation 90 are public, as the regulation says they are, and would not reach any question under FOIL.

## II

If I did reach the FOIL issue, however, I would hold that the documents in issue here are exempt from disclosure under Public Officers Law § 87 (2) (d), because they "are submitted to an agency by a commercial enterprise . . . and . . . if disclosed would cause substantial injury to the competitive position of the subject enterprise."

The insurers' submissions make a specific and persuasive showing of competitive injury. The affidavit of Eric Webster, an official of intervenor State Farm Mutual Automobile Insurance Company, explains in detail how a State Farm competitor could gain an advantage from State Farm's Regulation 90 reports. Such a competitor, Webster says, would compare and merge its zip code data with State Farm's, would use that data to estimate its and State Farm's market share in each zip code, would determine from that which areas to target, would do a targeted marketing campaign, and would use the results to create a statistical model to guide future marketing. Webster adds that Regulation 90 reports would help competitors assess the weaknesses and strengths of particular State Farm agents' performance, using techniques that Webster describes at length. He also explains how, by tracking changes disclosed by the reports in "risk placement" between State Farm and an affiliated company, a competitor could detect a new State Farm marketing strategy, for example "a shift toward[ ] youthful, higher risk customers in specific zip codes." Affidavits submitted by officials of the other insurer intervenors also contain explanations of the harm they will suffer.

The insurers' factual submissions total 19 pages. The majority brushes them aside in three sentences. It says their showing "is theoretical at best" (majority op at 51), but that is true only in the sense that any attempt to predict the consequences of disclosure must be theoretical. The statute requires such a pre-

diction. The exemption created by section 87 (2) (d) is available only on a showing that the information "if disclosed would cause substantial injury."

The majority mentions only one of the insurers' points, which it chooses to call their "key argument" (majority op at 51). The majority then responds with the unsupported assertion that "it has not been shown that zip code data, without more, would necessarily put the insurer at a competitive disadvantage" (*id.*). But that is exactly what the insurers have shown, in extensive detail—and even without that showing, it would be self-evident that a business can get a substantial advantage from information about its competitor's success or lack of it in particular locations.

I have little doubt that insurers will suffer some significant competitive injury from the public disclosure of Regulation 90 reports. I would order those reports disclosed anyway, because I read the regulation as a policy determination by the Insurance Department, acting under the authority given it by the anti-redlining statute (Insurance Law § 3429), that the reasons for making this information public outweigh the insurers' legitimate reasons for keeping it confidential. But the majority's attempt to pretend that no policy choice need be made, because no competitive injury has been shown, simply ignores the record.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ and JONES concur with Judge PIGOTT; Judge SMITH concurs in result in a separate opinion.

Order reversed, etc.