STEIN, J. (dissenting).
Whether, and to what extent, law enforcement agencies should be permitted, under the Freedom of Information Law (Public Officers Law art 6 [FOIL] ), to issue "Glomar" responses (see Phillippi v. Central Intelligence Agency, 546 F.2d 1009, 1012 [D.C. Cir.1976] ) that refuse to confirm or deny the existence of requested records is a thorny question with strong competing public policy concerns on each side of the debate. However, this Court must look to New York's FOIL statute, as it is written and has been interpreted by our prior case law, to answer the question of whether Glomar responses are permissible and, if so, under what circumstances. In my view, authorization for such responses cannot be found in, or reconciled with, the language of FOIL, and the majority's determination to the contrary sanctions a blanket exemption from disclosure for a vast amount of information and records. Granting such a broad judicial exemption is at odds with the express will of the legislature, as reflected in the statutory text.
It is beyond dispute that terrorism presents a significant threat that our law enforcement agencies must be equipped to combat. Undoubtedly, the concerns of respondent New York City Police Department (N.Y.PD) and various amici warrant ***259 legislative attention with regard to whether FOIL should be amended to allow agencies to refuse to acknowledge the existence of certain records when confronted with requests seeking targeted information regarding, among other things, "pending" or "ongoing" law enforcement investigations of particular persons or organizations (majority op. at 226, 227, 76 N.Y.S.3d at 464-65, 465-66, 100 N.E.3d at 803-04, 804-05). Conversely, there are compelling policy arguments raised by petitioners and amici on the other side of the issue, pertaining to governmental transparency and accountability, and to a citizen's right to access information pursuant to FOIL. These concerns also merit legislative consideration. Because existing state law does not accommodate Glomar responses, weighing these competing interests is a matter for the legislature, not the Court. I, therefore, respectfully dissent.
I.
FOIL is founded upon the " 'premise that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government' " ( Matter of Madeiros v. New York State Educ. Dept., 30 N.Y.3d 67, 73, 64 N.Y.S.3d 635, 86 N.E.3d 527 [2017], quoting Matter of Fink v. Lefkowitz, 47 N.Y.2d 567, 571, 419 N.Y.S.2d 467, 393 N.E.2d 463 [1979] ). As explained in the FOIL "Legislative declaration,"
"a free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions. The more open a government is with its citizenry, the greater the understanding and participation of the public in government.
''As state and local government services increase and public problems become more sophisticated and complex and therefore harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible.
''The people's right to know the process of governmental decision-making and to *828 review the documents and statistics leading to determinations is basic to our society. Access to such information **489 should not be thwarted by shrouding it with the cloak of secrecy or confidentiality. ***260 ''The legislature therefore declares that government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article"
( Public Officers Law § 84 ). Consistent with this legislative intent, we have recognized that "judicious use of the provisions of [FOIL] can be a remarkably effective device in exposing waste, negligence and abuses on the part of government; in short, 'to hold the governors accountable to the governed' " ( Matter of Fink, 47 N.Y.2d at 571, 419 N.Y.S.2d 467, 393 N.E.2d 463, quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 [1978] ).
To effectuate these goals, FOIL incorporates a presumption of access to records (see Matter of Data Tree, LLC v. Romaine, 9 N.Y.3d 454, 462, 849 N.Y.S.2d 489, 880 N.E.2d 10 [2007] ). More specifically, Public Officers Law § 87(2) states that an agency "shall ... make available for public inspection and copying all records" (emphasis added). This open access is qualified by the caveat that an agency "may deny access to records or portions thereof" which, "if disclosed," would cause certain specified harms ( Public Officers Law § 87[2] ). The harms justifying an agency's denial of access include, as relevant here, disclosure of records and information that would constitute an unwarranted invasion of privacy or endanger the life or safety of any person, as well as disclosure of records compiled for law enforcement purposes, where such disclosure would interfere with law enforcement investigations or judicial proceedings, identify confidential sources or confidential information relating to a criminal investigation, or reveal criminal investigative techniques or procedures (see Public Officers Law § 87[2][b] ; [2][e][i], [ii], [iv]; [2][f] ). The crux of the question before us on this appeal is whether FOIL authorizes a "Glomar" response-i.e., an agency response that neither confirms nor denies the existence of requested records but, rather, presupposes that, if the requested materials did exist, they would qualify for exemption under one of these provisions.
To that end, "our primary consideration 'is to ascertain and give effect to the intention of the Legislature' " as indicated through the statutory text (Matter of DaimlerChrysler Corp. v. Spitzer, 7 N.Y.3d 653, 660, 827 N.Y.S.2d 88, 860 N.E.2d 705 [2006], quoting Riley v. County of Broome, 95 N.Y.2d 455, 463, 719 N.Y.S.2d 623, 742 N.E.2d 98 [2000] ). Further, we must "giv[e] effect to the plain meaning" of unambiguous language ( ***261 Majewski v. Broadalbin-Perth Cent. School Dist., 91 N.Y.2d 577, 583, 673 N.Y.S.2d 966, 696 N.E.2d 978 [1998] ), and "the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended" (McKinney's Cons Laws of NY, Book 1, § 74; see Matter of Corrigan v. New York State Off. of Children & Family Servs., 28 N.Y.3d 636, 642, 49 N.Y.S.3d 46, 71 N.E.3d 537 [2017] ; Commonwealth of N. Mariana Is. v. Canadian Imperial Bank of Commerce, 21 N.Y.3d 55, 61, 967 N.Y.S.2d 876, 990 N.E.2d 114 [2013] ).
As written, FOIL permits an agency to "deny access" to records or information where the requested "disclosure" meets certain criteria ( Public Officers Law § 87[2] ), and regulations governing the *829 FOIL process require that any "[d]enial of access shall be in writing stating the reason therefor" ( 21 NYCRR 1401.7 [b]; see **490 Public Officers Law §§ 86[3] ; 89[1][b][iii]; 21 NYCRR 1401.1 [b] ).[1] The FOIL statutes and regulations do not expressly allow an agency to refuse to acknowledge the existence of the record or information that is responsive to the FOIL request (see Public Officers Law §§ 87, 89 ; 21 NYCRR 1401.5 ). Moreover, such a refusal would be inconsistent with Public Officers Law § 89(3)(a), which sets forth the permissible responses to a FOIL request: grant the request and "make such record available to the person requesting it"; deny the request for access; acknowledge the request and specify the date on which it will be granted or denied; or certify that the record cannot be found or is not in the agency's possession (see Matter of Beechwood Restorative Care Ctr. v. Signor, 5 N.Y.3d 435, 440-441, 808 N.Y.S.2d 568, 842 N.E.2d 466 [2005] ["When faced with a FOIL request, an agency must either disclose the record sought, deny the request and claim a specific exemption to disclosure, or certify that it does not possess the requested document and that it could not be located after a diligent search"]; Comm on Open Govt FOIL-AO-18946 [2012] ["interpret[ing] the certification requirement to be necessary if requested, after the agency has indicated that there are no records"] ).[2] These permitted responses do not contemplate an agency's refusal to acknowledge the existence ***262 or non-existence of information or a record that the agency possesses. The majority's novel interpretation of the heretofore generally accepted responses available to agencies responding to FOIL requests introduces new uncertainty into the FOIL process.
Pursuant to Public Officers Law § 89(4)(b), "[i]n the event that access to any record is denied pursuant to the provisions of ... section [87(2) ] of this article, the agency involved shall have the burden of proving that such record falls within the provisions of such subdivision." We have long held that, to meet this burden, an agency must " 'articulate particularized and specific justification' " for denying disclosure (Matter of Friedman v. Rice, 30 N.Y.3d 461, 475, 68 N.Y.S.3d 1, 90 N.E.3d 800 [2017], quoting Matter of Fink, 47 N.Y.2d at 571, 419 N.Y.S.2d 467, 393 N.E.2d 463 ; see Matter of Capital Newspapers Div. of Hearst Corp. v. Burns, 67 N.Y.2d 562, 566, 505 N.Y.S.2d 576, 496 N.E.2d 665 [1986] ), and we have made it clear that "blanket exemptions for particular types of documents are inimical to FOIL's policy of open government" ( Matter of Gould v. New York City Police Dept., 89 N.Y.2d 267, 275, 653 N.Y.S.2d 54, 675 N.E.2d 808 [1996] ).
We also have emphasized that FOIL "exemptions are to be narrowly interpreted so that the public is granted maximum *830 access to the records of government" ( Matter of Data Tree, LLC, 9 N.Y.3d at 462, 849 N.Y.S.2d 489, 880 N.E.2d 10 ; see **491 Matter of Madeiros, 30 N.Y.3d at 73, 64 N.Y.S.3d 635, 86 N.E.3d 527 ). An agency "cannot merely rest on a speculative conclusion that disclosure might potentially cause harm" ( Matter of Markowitz v. Serio, 11 N.Y.3d 43, 51, 862 N.Y.S.2d 833, 893 N.E.2d 110 [2008] ). Rather, "[o]nly where the material requested falls squarely within the ambit of one of these statutory exemptions may disclosure be withheld" ( Matter of Fink, 47 N.Y.2d at 571, 419 N.Y.S.2d 467, 393 N.E.2d 463 ).
The NYPD attempts to circumvent the plain language of FOIL and these principles governing the use of FOIL exemptions-and, ultimately to avoid their burden of proving the applicability of such an exemption-by arguing that a Glomar response must be permissible because, in some limited contexts, a FOIL request may be framed in such a way that disclosure of the existence of the record, alone, causes the same harm as disclosure of the actual record sought. To be sure, " 'the purpose of [FOIL] is not to enable persons to use agency records to frustrate pending or threatened investigations nor to use that ***263 information to construct a defense to impede a prosecution' " ( Matter of Madeiros, 30 N.Y.3d at 77, 64 N.Y.S.3d 635, 86 N.E.3d 527, quoting Matter of Fink, 47 N.Y.2d at 572, 419 N.Y.S.2d 467, 393 N.E.2d 463 ). For that reason, and consistent with the statutory exemption for such disclosures, we have held that FOIL does not require the disclosure of records when it would interfere with a "pending" investigation or prosecution or one that is "plainly contemplated in the near future" ( Matter of Madeiros, 30 N.Y.3d at 77, 64 N.Y.S.3d 635, 86 N.E.3d 527 ; see Public Officers Law § 87[2][e][i] ).
The flaw in the NYPD's position is that, in order for a Glomar response to be effective, it must be utilized whether or not the requested record exists and whether or not a FOIL exemption actually applies. In other words, to permit the Glomar response is to authorize the agency-here, the NYPD-to give the same response to individuals requesting information pertaining to its investigations regardless of whether the subject of the requested information is actively being investigated, was never investigated, or was investigated and cleared of any wrongdoing in the past. After all, the Glomar response would be the equivalent of an implicit concession that responsive records exist if invoked only when there is an ongoing investigation.
To illustrate how the Glomar response can protect information otherwise disclosable under FOIL, we need only point out that the Glomar response will inevitably cloak in secrecy records pertaining to closed investigations. Without additional factual explanation, the NYPD would lack a valid claim that revealing the nonexistence of records would cause any harm qualifying for FOIL exemption, such as interference with a law enforcement investigation, identification of a confidential source, or endangerment of life and safety (see Matter of Lesher v. Hynes, 19 N.Y.3d 57, 68, 945 N.Y.S.2d 214, 968 N.E.2d 451 [2012] ). In such instances, it is likely that a FOIL exemption would not apply and, typically, "[i]f the [agency] fails to prove that a statutory exemption applies, FOIL 'compels disclosure, not concealment' " ( Matter of Data Tree, LLC, 9 N.Y.3d at 463, 849 N.Y.S.2d 489, 880 N.E.2d 10, quoting Matter of Westchester Rockland Newspapers v. Kimball, 50 N.Y.2d 575, 580, 430 N.Y.S.2d 574, 408 N.E.2d 904 [1980] ). The Glomar doctrine, however, permits concealment.
*831 To adopt the Glomar doctrine is, therefore, to endorse an impermissible blanket exemption that is not set forth in the statute and which applies without regard to **492 whether the harm protected by the relevant FOIL exemption is actually implicated or whether it is merely speculative. Contrary to the majority's ***264 suggestion, such a result is not sanctioned by our holding in Matter of Lesher v. Hynes, 19 N.Y.3d 57, 945 N.Y.S.2d 214, 968 N.E.2d 451 [2012] ). In Lesher, we held that law enforcement agencies may determine that disclosure of particular kinds of investigatory records would generally interfere with pending investigations or proceedings and that an agency need not, in responding to every specific request, always articulate facts demonstrating that the particular pending investigation in question would be jeopardized by disclosure (see id. at 67, 945 N.Y.S.2d 214, 968 N.E.2d 451 ). However, we "emphasize[d] that this does not mean that every document in a law enforcement agency's criminal case file is automatically exempt from disclosure simply because kept there" and that "[t]he agency must identify the generic kinds of documents for which the exemption is claimed" ( id. at 67, 945 N.Y.S.2d 214, 968 N.E.2d 451 ). In that case, the District Attorney met this burden by identifying the responsive documents as "crime summaries, timelines of when and where each crime occurred, witness names and personal information, and witness statements" ( id. at 63, 945 N.Y.S.2d 214, 968 N.E.2d 451 ). Here, in stark contrast, the NYPD has not indicated whether any responsive documents even exist, let alone the nature of such documents, to support their claimed exemptions as required by Lesher. Further, we made clear in Lesher that disclosure may be mandated where there is "no longer any pending or potential law enforcement investigation" ( id. at 68, 945 N.Y.S.2d 214, 968 N.E.2d 451 ). The majority does not explain how the Glomar response can be applied in a manner consistent with this directive.
In view of our recognition that "the Legislature established a general policy of disclosure by enacting the Freedom of Information Law" ( Matter of Fink, 47 N.Y.2d at 571, 419 N.Y.S.2d 467, 393 N.E.2d 463 ), this Court recently held that "we cannot undermine that policy by exempting a large category of information from FOIL in a manner inconsistent with the plain language of the statute" ( Matter of Friedman, 30 N.Y.3d at 478, 68 N.Y.S.3d 1, 90 N.E.3d 800 ). Yet, the majority does just that by giving a law enforcement agency carte blanche to exempt, with precious little (if any) judicial oversight, a broad swathe of governmental records, without regard to whether the records requested-assuming they do exist-actually fall within the plain language of the exemption on which the Glomar response is purportedly based or whether the agency has made any factual showing to that effect.
Here, no "particularized and specific justification" was offered for the exemptions claimed ( Matter of Fink, 47 N.Y.2d at 571, 419 N.Y.S.2d 467, 393 N.E.2d 463 ), as reflected by the fact that the NYPD submitted identical ***265 affidavits justifying use of the Glomar response to FOIL requests made by, and concerning investigations and surveillance of, two different individuals and the distinct organizations with which they are associated. In fact, while the majority repeatedly characterizes the requested records as relating to a "pending" or "ongoing" "covert" investigation (majority op. at 226, 227, 76 N.Y.S.3d at 464-65, 465-66, 100 N.E.3d at 83-04, 804-05), those characterizations are based on both an unsupported assumption and an astonishingly expansive view of the relevant "investigation." To be clear, we do not know whether either of the petitioners *832 here were ever investigated or whether they are currently implicated in any ongoing or pending investigations, warranted or otherwise. We **493 do not know if any past or current investigations of petitioners actually related to counterterrorism or whether any such investigations involved some other matter where disclosure would not implicate the same concerns posited by the NYPD. Frankly, we know very little beyond the undeniable reality that terrorism and the NYPD's counterterrorism efforts are of significant importance. However, this does not obviate the requirement that the agency comply with the mandate of the FOIL statute, as enacted by the legislature.[3] ***266 Moreover, despite our repeated direction that, "[i]f the court is unable to determine whether withheld documents fall entirely within the scope of the asserted exemption, it should conduct an in camera inspection of representative documents and order disclosure of all nonexempt, appropriately redacted material" ( Matter of Gould, 89 N.Y.2d at 275, 653 N.Y.S.2d 54, 675 N.E.2d 808 ; see Matter of Fink, 47 N.Y.2d at 571, 419 N.Y.S.2d 467, 393 N.E.2d 463 ), the majority abdicates this oversight in adopting the Glomar doctrine in this case, resulting in our inability to determine whether a FOIL exemption squarely applies. Rather, the majority accepts, without any scrutiny, the NYPD's claim that the scope of the relevant "investigation" *833 is "terrorism," and that revelation of any investigation-apparently of any person for any reason-could impede **494 its counterterrorism efforts.[4] Viewed in this light, it follows that the NYPD could claim the right to refuse to confirm or deny the existence of any record that even tangentially relates to any past, present, or future investigation of "crime," thereby avoiding its FOIL obligations in innumerable cases. It is the legislature's prerogative to decide whether a blanket exemption of this type is consistent with the objectives of FOIL. ***267 II.
To support its position before us, the NYPD relies heavily on federal case law interpreting the Freedom of Information Act ( 5 USC § 552 [FOIA] ) and adopting the Glomar doctrine. This reliance is understandable considering that the doctrine originated in federal courts, FOIL is modeled on FOIA, and we have often found FOIA case law to be instructive (see e.g. Matter of Lesher, 19 N.Y.3d at 64, 945 N.Y.S.2d 214, 968 N.E.2d 451 ; Matter of Madeiros, 30 N.Y.3d at 76, 64 N.Y.S.3d 635, 86 N.E.3d 527 ). Nevertheless, we have never before endorsed a blind adoption of a federal judicial doctrine in analyzing a matter of state statutory construction and, in my view, it is inappropriate to follow federal case law here in light of material distinctions between the two statutory schemes.
The Glomar doctrine originated in 1976 when the Central Intelligence Agency (CIA) responded to a request for information regarding the Hughes Glomar Explorer-an oceanic research vessel that was allegedly owned by the United States government and used to retrieve a sunken Soviet Union submarine during the Cold War-by refusing to either confirm or deny the existence of relevant records (see Phillippi, 546 F.2d at 1012 ). The CIA asserted that the existence or nonexistence of the requested records was, itself, a classified fact since admitting their existence would implicitly reveal that the CIA had some affiliation with the Explorer. Accordingly, the CIA argued that the existence or nonexistence of records was exempt from disclosure pursuant to FOIA Exemptions (1) and (3), which exempt "classified" information (see 5 USC § 552 [b][1] ) and certain additional information that is specifically exempted from disclosure by other statutes (see 5 USC § 552 [b][3] ), such as the National Security Act of 1947. As the majority recognizes, Glomar has since been adopted by other federal Circuits (see e.g. Taylor v. National Sec. Agency, 618 Fed. Appx. 478, 482 [11th Cir.2015] ; Wilner v. National Sec. Agency, 592 F.3d 60, 67-68 [2d Cir.2009], cert denied 562 U.S. 828, 131 S.Ct. 387, 178 L.Ed.2d 24 [2010] ; Bassiouni v. Central Intelligence Agency, 392 F.3d 244, 246 [7th Cir.2004], cert denied 545 U.S. 1129, 125 S.Ct. 2945, 162 L.Ed.2d 868 [2005] ).
At its inception, the Glomar doctrine was not expressly authorized by the FOIA
*834 statute (see e.g. Shapiro v. United States Dept. of Justice, 153 F.Supp.3d 253, 275 [D. D.C. 2016] [recognizing that the Glomar doctrine is a judicial "gloss" on **495 FOIA's text]; American Civ. Liberties Union v. Central Intelligence Agency, 710 F.3d 422, 431 [D.C. Cir.2013] ["The Glomar doctrine is in large measure a judicial construct"] ). Nevertheless, federal ***268 courts concluded that the doctrine did not directly conflict with the text of FOIA which, unlike FOIL, does not limit the agency's available responses but, rather, permits an agency to treat FOIA as "not apply[ing] to matters that are" delineated as exempt ( 5 USC § 552 [b] [emphasis added] ). This language leaves substantially more room for judicial interpretation.
In those federal courts in which the Glomar doctrine has gained acceptance, it has been invoked almost exclusively in connection with FOIA Exemptions (1) and (3) (see 5 USC § 552 [b][1], [3] ) and, to a lesser extent, Exemption 7(C) (see 5 USC § 552 [b][7][C] [pertaining to disclosures that would constitute an unwarranted invasion of personal privacy]; see e.g. Cause of Action v. Treasury Inspector Gen. for Tax Admin., 70 F.Supp.3d 45, 55 [D. D.C. 2014] ). Notably, there is no counterpart in FOIL to the exemption for "classified" information under FOIA Exemptions (1) and (3), and the NYPD does not claim to have any state-authorized classification authority (see Public Officers Law § 87[2] ). Nor does the NYPD point to any other statutes through which the requested records "are specifically exempted from disclosure by state or federal statute" ( Public Officers Law § 87[2][a] ). Inasmuch as the federal cases relied on by the majority primarily concern FOIA Exemptions (1) and (3), they are inapposite for the reasons explained in Judge Wilson's partial dissent (see Hunt v. Central Intelligence Agency, 981 F.2d 1116 [9th Cir.1992] ; Larson v. Department of State, 565 F.3d 857 [D.C. Cir.2009] ; Gardels v. Central Intelligence Agency, 689 F.2d 1100 [D.C. Cir.1982] ).[5] It merits comment that, in Hunt v. Central Intelligence Agency, quoted by the majority ***269 at length, the Ninth Circuit recognized that federal courts are, through the Glomar doctrine, "only a short step [from] exempting all CIA records from FOIA" and that this "result may well be contrary to what Congress intended" ( 981 F.2d at 1120 [internal quotation marks omitted] ). The majority overlooks this cautionary *835 warning and ignores the reality that the Glomar response operates as a blanket exemption.
Cases applying the Glomar doctrine to the law enforcement exemptions in **496 FOIA-the federal analogues to the exemptions on which the NYPD principally rely here-are scarce.[6] This is likely because, ten years after the judicial formulation of the Glomar doctrine, Congress enacted 5 USC § 552(c) (see tit I, subtit N, §§ 1801-1804, 100 US Stat 3207-48 to 3207-50), which sets forth exclusions that specifically authorize agencies to "treat the records as not subject to the requirements of" FOIA. The section 552(c) exclusions apply where a FOIA request involves access to records: (1) compiled for investigations of criminal violations of the law, where disclosure can reasonably be expected to interfere with enforcement proceedings and "there is reason to believe that ... the subject of the investigation or proceeding is not aware of its pendency"; (2) "maintained by a criminal law enforcement agency under an informant's name or personal identifier [that] are requested by a third party according to the informant's name or personal identifier, ... unless the informant's status as an informant has been officially confirmed"; and (3) "maintained by the [FBI] pertaining to foreign intelligence or counterintelligence, or international terrorism, and the existence of the records is classified information" ( 5 USC § 552 [c][1]-[3] ). Thus, in enacting ***270 subdivision 552(c), Congress codified the use of a Glomar-type response for law enforcement investigations, including those that do not necessarily involve "classified" information (see Benavides v. Drug Enforcement Admin., 968 F.2d 1243, 1246 [D.C. Cir.1992] [concluding "from the text and legislative history that Congress intended [ § 552(c) ] to provide express legislative authorization for a Glomar response"], op mod on reh 976 F.2d 751 [D.C. Cir.1992] ; see Light v. Department of Justice, 968 F.Supp.2d 11, 30 [D. D.C. 2013] ; see e.g. Pickard v. Department of Justice, 653 F.3d 782, 786 [9th Cir.2011] [analyzing Glomar response under 5 USC § 552(c) ] ). Indeed, the enactment of section 552(c) was largely prompted by the FBI's recognition that, while the CIA could utilize Exemptions (1) and (3) to issue a Glomar response, "using such a response to protect 'sensitive, ongoing criminal investigations' would not be 'in full compliance with the letter and spirit of the FOIA' " ( American Civil Liberties Union of Mich. v. Federal Bureau of Investigation, 734 F.3d 460, 469 [6th Cir.2013], quoting Hearings on the Freedom of Information Reform Act Before a Subcomm. of the H. Comm. On Gov't Operations, 98th Cong. 906-910 [Aug 9, 1984] ).
Although years have passed since the proliferation of the Glomar doctrine under federal case law, and decades have gone by since congressional enactment of section 552(c) to define the narrow circumstances in which the Glomar doctrine should be applied to law enforcement investigations, our state legislature has not authorized the *836 Glomar response. This is so despite numerous other amendments to FOIL. Abiding by the principle that "courts are not to legislate under the guise of interpretation" or by reading into a statute an exception **497 that does not exist," it is not our place to do so now ( People v. Finnegan, 85 N.Y.2d 53, 58, 623 N.Y.S.2d 546, 647 N.E.2d 758 [1995], cert denied 516 U.S. 919, 116 S.Ct. 311, 133 L.Ed.2d 214 [1995] ).
III.
The majority repeatedly asserts that permissible use of the Glomar doctrine will be "rare" and "unusual" (majority op. at 233, 76 N.Y.S.3d at 469-70, 100 N.E.3d at 808-09). However, application of the doctrine under the circumstances presented here-despite the absence of in camera review to determine whether any of the exemptions set forth in FOIL actually apply and by defining the relevant investigation at the macro level of "terrorism"-casts doubt on whether that will, or indeed can ever be, the reality. While complete rejection ***271 of the doctrine may have concerning implications of its own, even federal courts have recognized that "[t]he danger of Glomar responses is that they encourage an unfortunate tendency of government officials to over-classify information, frequently keeping secret that which the public already knows, or that which is more embarrassing than revelatory of intelligence sources or methods" ( American Civ. Liberties Union v. Department of Defense, 389 F.Supp.2d 547, 561 [S.D. N.Y.2005] ). Adoption of the Glomar doctrine without legislative guidance in the statutory text, and with insufficient procedural safeguards, is bound to unduly "constrict[ ] the broad access to which the public is entitled under the law" ( Matter of Friedman, 30 N.Y.3d at 477, 68 N.Y.S.3d 1, 90 N.E.3d 800 ).
In my view, the analyses of the majority and the partial dissent tread too closely to a weighing of policy arguments relating to the wisdom of the respective parties' perspectives with regard to society's interests in government transparency during dangerous times. These difficult choices are for the legislature, not for this Court to make under the guise of statutory interpretation. Ultimately, our task is to read and give effect to the statute "as it is written by the [l]egislature, not as the court may think it should or would have been written if the [l]egislature had envisaged all the problems and complications which might arise" ( People v. Tychanski, 78 N.Y.2d 909, 911, 573 N.Y.S.2d 454, 577 N.E.2d 1046 [1991] [internal quotation marks and citations omitted] ).
Accordingly, I dissent.
Order affirmed, with costs.
Judges Fahey, Garcia and Feinman concur; Judge Wilson dissents in part in an opinion; Judge Stein dissents in an opinion in which Judge Rivera concurs.

The majority, too, resorts to occasional hyperbole. It describes the logical conclusion of the petitioners' argument as the NYPD having to acknowledge the existence of an investigation involving a particular person "whether the FOIL request comes from the target, a newspaper, or some other member of the public" (majority op. at 228, 76 N.Y.S.3d at 466, 100 N.E.3d at 805). The NYPD, however, demands a release before commencing a search for records that could implicate an individual's privacy and are being requested by the third party. The petitioners' requests are restricted to requests for information about themselves.

That standard is stricter than federal courts' "deferential posture" toward agency affidavits attempting to justify Glomar responses under FOIA Exemptions 1 and 3 (Larson, 565 F.3d at 865 ). Although courts in those cases "must accord substantial weight to an agency's affidavit", their relaxed scrutiny has nothing to do with the portable logic of a Glomar-like response (Wolf v. C.I.A., 473 F.3d 370, 374 [D.C. Cir.2007] [internal quotation marks and emphasis omitted] ). Instead, it is the result of a Congressional dictate specific to affidavits " 'concerning the details of the classified status of the disputed record' " (Ray v. Turner, 587 F.2d 1187, 1194 [D.C. Cir.1978], quoting S Rep No 93-1200, 93d Cong., 2d Sess. 12 [1974], reprinted in 1974 USCCAN 6267, 6290). New York, as already noted, has no analog to the first FOIA exemption, no Congress, and no classification authority.
In any case, the lower federal standard is simply incompatible with our precedents (compare Larson, 565 F.3d at 862 ["Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible' "] with Data Tree, 9 N.Y.3d at 462, 849 N.Y.S.2d 489, 880 N.E.2d 10 [an agency must meet its burden "in more than just a 'plausible fashion' "]; compare also Gardels v. CIA., 689 F.2d 1100, 1105 [D.C. Cir.1982] ["The test is not whether the court personally agrees in full with the CIA's evaluation of the danger-rather, the issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility"] with Markowitz, 11 N.Y.3d at 51, 862 N.Y.S.2d 833, 893 N.E.2d 110 [the court must find the agency's evidence "persuasive"] ). The lower courts properly rejected its application here (see Matter of Abdur-Rashid v. New York City Police Dep't, et al., 140 A.D.3d 419, 420-21, 37 N.Y.S.3d 64 [1st Dept. 2016] [holding the NYPD to FOIL cases' usual "error of law" standard under Article 78]; Matter of Abdur-Rashid v. New York City Police Dep't, 45 Misc.3d 888, 893, 992 N.Y.S.2d 870 [Sup. Ct., N.Y. County 2014] [observing that the federal standard stems from a unique national security context and concluding that "(a)lthough federal cases note that a court must accord 'substantial weight' to the agency's affidavits, this court only looks to federal cases for guidance in interpreting the requirement and is not required to give the same substantial weight to the affidavits"] ).

I join the majority in rejecting our federal counterparts' reluctance to review in camera documents whose existence the agency wishes neither to confirm nor to deny (see Phillippi v. Central Intelligence Agency , 546 F.2d 1009, 1012-1013 [D.D.Cir.1976] ["When the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits"] ). That reluctance is not only at odds with our precedent, but also predicated on Glomar's unique context. Because federal courts have committed to policing, absent a showing of bad faith, only the formal logic of an agency's affidavit, they have less need to examine the documents, if any, underlying that affidavit. Furthermore, the blanket nature of the first and third FOIA exemptions makes in camera review both less relevant and considerably more time-consuming for the court. As most equally circumscribed responses under FOIL will be justified by the extremely specific way in which the requests are phrased, they are likely to involve more exercises of discretion and fewer responsive records through which the court, aided by a confidential index, can be expected to sift. This aspect of the Glomar doctrine has sustained particularly heavy criticism (Wessler, 85 NYU L Rev at 1409-1410 [calling "in camera review of any underlying records ... an important first step toward reform of the Glomar response"] ).

Although I have discussed the safeguards in isolation in the interest of analytical clarity, there is interplay between them. For instance, "[w]here there is evidence of bad faith on the part of the agency[,]... [[i]n camera inspection is plainly necessary" (Carter v. U.S. Dep't of Commerce, 830 F.2d 388, 393 [D.C. Cir.1987] [internal quotation marks omitted] ).

It is important to remember that the proper denial of a FOIL request, whether a refusal to state whether responsive documents exist or merely a refusal to furnish the documents, means only that the documents will not be publicly available to all-not that courts must refuse their disclosure if relevant to a civil lawsuit. Thus, the majority correctly identifies civil litigation as a further check on government overreach, independent of FOIL (majority op. at 239, 76 N.Y.S.3d at 473-74, 100 N.E.3d at 812-13).

Their article 78 petitions, memoranda of law in opposition to the motion to dismiss, and their combined brief on appeal all request the court either direct the NYPD to release the records or order an in camera view. The NYPD understood petitioners to be asking the courts to base their decisions on the motions to dismiss on not only the public affidavit but also on an in camera review of responsive documents, if any, but argued that review was "inapposite and entirely premature" under the Glomar doctrine. In Hashmi, Supreme Court's decision and statements at oral argument on the motion for leave to appeal left little doubt that it would have evaluated the motion to dismiss in the light of an in camera review of the responsive documents, if any, had it not been already inclined to deny the petition on theoretical grounds and had it not thought in camera review precluded by analogy to the Glomar doctrine. Supreme Court in Abdur-Rashid, and the Appellative Division in the combined appeal, did not address the request.