| Isaly v Garde |
|:---:|
| 2024 NY Slip Op 30877(U) |
| March 18, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 160699/2018 |
| Judge: James E. d'Auguste |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    Hon. James E. d'Auguste            PART 55

*Justice*

---------------------------------------------------------------------X

SAMUEL D. ISALY,

                    Plaintiff,

            - v -

DAMIAN GARDE, DELILAH BURKE,

                  Defendants.

---------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 160699/2018 |
| MOTION DATE | 06/23/2023, 09/19/2023 |
| MOTION SEQ. NO. | 003, 004, 007, 008 |

**AMENDED
DECISION + ORDER ON
MOTION**

The Court's decision and order dated February 14, 2024 and filed as NYSCEF Doc. Nos. 196-200 is amended as follows:

Plaintiff moves in Motion Seq. No 007 for an order vacating the stay and protective orders granted in this defamation action as part of the Court's December 6, 2022 decision and order published at 2022 NY Slip Op 34108(U) (the "December Decision").[1] Plaintiff also seeks, in Motion Seq. No. 008, leave to conduct discovery to oppose those branches of defendants' motions to dismiss (Motion Seq. Nos. 003 and 004) that had been held in abeyance pending the Court of Appeals' consideration of New York's Anti-SLAPP Law, and to deny those motions to dismiss. For the reasons set forth below, plaintiff's motion for discovery is denied, plaintiff's motion to vacate the protective orders and stay is granted to the extent of lifting the stay and granting defendants' motions to dismiss this action pursuant to the Anti-SLAPP Law, and the Court directs further proceedings to determine the award of defendants' reasonable attorney's fees and costs.[2]

---

[1] The Appellate Division, First Department affirmed the December Decision in a May 30, 2023, decision published at 216 A.D.3d 594. The Court also declined to vacate the December Decision in a decision dated June 27, 2023, and published at 2023 N.Y. Misc. LEXIS 3365.

[2] In considering Motion Seq. Nos. 007 and 008 (and through them, the remaining branches of Motion Seq. Nos. 003 and 004), the Court read all of the papers respectively filed in those motion sequence numbers in NYSCEF, and the parties are directed to NYSCEF for that information pursuant to CPLR 2219. Because of the sheer volume of papers, the Court has not listed them all here. To the extent any party wishes a separate list delineated by NYSCEF document number, they may settle an order doing so on notice.

**160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN**
**Motion No. 003 004 007 008**

**Page 1 of 14**

1 of 14

## Background and Previous Proceedings

This action, which has already been the subject of multiple reported decisions, arises from defendant Garde's December 2017 article in STAT reporting the accounts of five women that plaintiff had "for years perpetuated a toxic culture of sexual harassment…routinely subjecting young female assistants to pornography in the workplace, lewd jokes, and pervasive sexist comments…kept a set of breast implants on his desk, palpating them like stress balls during idle conversation…and wantonly demeaned and verbally abused female employees," while managing a prominent hedge fund firm. (Amended Complaint, Ex. A., at 1). Plaintiff and his colleagues conceded during defendant's Garde's interview of them that "the firm had investigated claims against [plaintiff]," (but had "concluded none rose to the level of 'a sexually egregious behavior,'" without defining that standard) while plaintiff acknowledged having had breast implants in his office. (Amended Complaint, Ex. A., at 2; and Interview Transcript filed NYSCEF Doc. No. 16, at 19). In a final comment to defendant Garde prior to publication, one of plaintiff's colleagues stated that "[i]f this article proceeds I hope that you will be fair and focus on the person responsible, not the entire firm." (Amended Complaint, Ex. A., at 2). On December 5, 2017, the article published under the headline "[b]iotech hedge fund titan Sam Isaly harassed, demeaned women for years, former employees say." (Amended Complaint, Ex. A, at 1).

Plaintiff subsequently commenced a series of actions litigated in state and federal court – including this action – variously alleging defamation by defendant Garde and his employers for having written and published the article, and against defendant Burke, the sole female accuser of plaintiff willing to speak with Garde on the record. *See, Isaly v. Boston Globe Media Partners*, LLC, Dkt. No. 23-67-cv, 2023 U.S. App. LEXIS 26124, *2-4 (2d Cir. Oct. 3, 2023) (affirming dismissal of federal action and discussing case history in state and federal courts).[3] The Court initially dismissed this action by decision and order dated July 11, 2022 and published at 2022 NY Slip Op 32203(U), about which plaintiff sought leave to reargue, which the Court granted in part by the Court's December 6th decision to the extent of holding defendants' Anti-SLAPP motions and a portion of defendant Burke's motion to dismiss in abeyance pending the Court of Appeals' action in *Gottwald v. Sebert*. 40 N.Y.3d 240 (2023). The First Department affirmed the December Decision (as noted previously), and denied plaintiff leave to reargue or appeal by decision and order dated September 7, 2023, and published at 2023 NY Slip Op 72896(U). Plaintiff then sought to

---

[3] This is the first of three actions plaintiff commenced before the Court. Subsequent to this action, plaintiff commenced *Isaly v. Boston Globe Media Partners, LLC* under New York County Index No. 151825/2022 on March 3, 2022 (which was removed to federal court as noted by the Court's June 13, 2022 order in that action), and *Isaly v. Garde* (against defendant Garde alone) under New York County Index No. 161333/2023 on November 20, 2023.

**160699/2018 ISALY, SAMUEL D. vs. GARDE, DAMIAN**
Motion No. 003 004 007 008

**Page 2 of 14**

appeal to the Court of Appeals, which the Court of Appeals dismissed by decision and order dated January 16, 2024, and published at 2024 NY Slip Op 60632.

Defendants do not oppose vacating the stay but instead request that the Court deny discovery and grant their applications for attorney's fees and costs pursuant to the Anti-SLAPP Law. The Court addresses the parties' arguments in turn.

### *The Anti-SLAPP Law as Amended by Chapter 250 Applies to the Continuation of this Action*

Plaintiff incorrectly asserts that the First Department's holding in *Gottwald*, which held that Chapter 250 did not apply to actions (like this one) commenced prior to its enactment, remains in force following the Court of Appeals' decision reviewing it.

While the Court of Appeals was divided 5-1 in holding that Chapter 250 was not retroactive to the commencement of all potential SLAPP actions pending at the time of its enactment, the Court unanimously held 6-0 that the First Department erred in *Gottwald* and that "continuation of Gottwald's suit beyond the effective date of the amendments entitles Sebert to recover damages," provided that defendant could establish an anti-SLAPP claim. *Gottwald*, at *259. It is, as the Court of Appeals held in *Gottwald*, the *continuation* of this action following Chapter 250's enactment, that raises the specter of Chapter 250 remedies. The Court has noted as much in this action once already. *June Decision*, at *13. "Plaintiff's theory…is like the rabbit hole of Alice in Wonderland, a portal into a realm in which down is up and up is down," and neither the Court nor the parties are served by repeating arguments that are not only flatly contradicted by the plain text of decisions but have been expressly considered and rejected in this action. *Brivik v. Murray*, Dkt. No. 11-cv-2101, 2014 U.S. Dist. LEXIS 26784, *10 (M.D. Fla. Mar. 3, 2014). *See also, D'Lil v. Best Western Encina Lodge & Suites*, Dkt. No. cv 02-9506, 2010 U.S. Dist. LEXIS 163123, *31 (C.D. Cal. Apr. 13, 2010) (noting court's concern that plaintiff's repetition of rejected arguments "was not the first time [plaintiff's counsel] had raised untenable arguments, wasting the Court's time and Defendants' money").

In re-casting his applicability argument in the instant motion, plaintiff relies upon the Appellate Division, Second Department's recent holding in *VIP Pet Grooming Studio, Inc. v. Sproule*, 2024 NY Slip Op 00205 (2d Dept. Jan. 17, 2024), which held that a plaintiff's complaint filed days before Chapter 250 took effect (and in which no subsequent action had been taken) was not subject to Chapter 250.[4] *VIP Pet*

---

[4] *See*, Jan. 22, 2024, email from Alan Lewis to Brian Krist.

**160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN**
**Motion No.  003 004 007 008**

**Page 3 of 14**

*Grooming Studio*, at \*4-5. *See also, Burton v. Porcelain*, 2024 NY Slip Op 00291 (2d Dept. Jan. 24, 2024) (citing *VIP Pet Grooming Studio* in finding that Chapter 250 did not apply in motion to dismiss pending at the time of its enactment). Although plaintiff argues that *VIP Pet Grooming Studio* controls, plaintiff is incorrect. This action is immediately distinguishable in the sheer scale of plaintiff's post-enactment litigation activity, and the Court of Appeals has stated that "[t]here is no retroactive effect when these provisions are applied, according to their terms, to the continuation of the action beyond the effective date of the amendments." *Gottwald*, at 258. This particularly includes plaintiff's August 2022 effort to again amend his complaint in Motion Seq. No. 005, long after Chapter 250 took effect.

At bottom, plaintiff invites the Court to disregard the Legislature and the Court of Appeals because plaintiff disagrees with them, which the Court cannot do. The Court "is bound to apply the law as it exists, and as interpreted by controlling…precedents," and cannot "usurp the role of the legislature or the Appellate Courts." *Luongo v. Records Access Officer*, 150 A.D.3d 13, 26 (1st Dept. 2017); and *People v. Alvarez-Hernandez*, 2002 NY Slip Op 50493(U), \*5 (Westchester Co. Ct. 2002). The Court is "not free to disagree, to disregard in the guise of reinterpretation, or to speculate upon probabilities or personalities," and "must follow the decisions and interpretations of our highest court in spite of any individual predilections," plaintiff may have. *United States v. Swift & Co.*, 189 F. Supp. 885, 901 (N.D. Ill. 1960). The Legislature and the Court of Appeals have spoken clearly that Chapter 250 applies to the continued litigation of existing cases after its enactment, and the Court will heed them.

### *Plaintiff's Constitutional Objections to Anti-SLAPP Legislation are Misplaced*

Plaintiff asserts that the Anti-SLAPP Law, as amended by Chapter 250, violates his state and federal constitutional rights of petition and jury trial. Once again, plaintiff is wrong. "[I]n amending its anti-SLAPP law to set a higher standard of fault for defamation claims involving private individuals…the New York legislature sought to protect an important substantive interest: the exercise of free speech about matters of public concern." Shannon Jankowski, *SLAPP-ing Back: Recent Legal Challenges to the Application of State Anti-SLAPP Laws*, American Bar Association (Mar. 16, 2022), at \*8. "The news media—and those who share their stories with the news media—have faced an onslaught of retaliatory and meritless litigation in recent years," which is a pernicious harm that New York may, and has, sought to curb without offending the state or federal constitutions. Jankowski, at \*9

Federally, the Framers recognized the idea that while "the erroneous statement of fact is not worthy of constitutional protection, it is nevertheless inevitable in free debate." *Gertz v. Robert Welch, Inc.*, 418

160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN
Motion No. 003 004 007 008

Page 4 of 14

[\* 4]                                        4 of 14

U.S. 323, 340 (1974) (citing James Madison's *Report on the Virginia Resolutions of 1798*). While the Supreme Court noted that "the individual's right to the protection of his own good name reflects no more than our basic concept of the essential dignity and worth of every human being -- a concept at the root of any decent system of ordered liberty," the Court has also "been especially anxious to assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise," and "[t]o that end this Court has extended a measure of strategic protection to defamatory falsehood." *Gertz*, at 342. While "many deserving plaintiffs, including some intentionally subjected to injury, will be unable to surmount the barrier," imposed by that "strategic protection," society's interest in protecting the marketplace of ideas trumps plaintiff's desire for heartbalm. *Gertz*, at 342. Put simply, and recently, "[t]he First Amendment, we have concluded, requires that we protect some falsehood in order to protect speech that matters." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) (discussing *Gertz*).

Plaintiff's reliance on decisions from Washington, Minnesota, New Hampshire, and Maine is misplaced. The Supreme Court of Washington premised its jury trial concerns about Washington's anti-SLAPP law entirely upon the Washington Constitution and, while finding that Washington's anti-SLAPP law interfered with plaintiffs' federal First Amendment rights, the Court simultaneously noted that "[f]rivolous suits (i.e., those that lack a 'reasonable basis,' are 'based on insubstantial claims,' or are "baseless') are not within the scope of a First Amendment protection." *Davis v. Cox*, 183 Wn. 2d 269, 290 (2015). In *Leiendecker v. Asian Women United of Minnesota*, the Minnesota Supreme Court based its holding striking down Minnesota's anti-SLAPP law entirely upon the Minnesota Constitution, without reference to the federal constitution at all. 895 N.W.2d 623, 634-635 (Minn. 2017). The New Hampshire Supreme Court similarly relied upon state, not federal, constitutional provisions in an *ex parte* advisory opinion to the New Hampshire Senate against a proposed anti-SLAPP bill. *See, Opinion of the Justices (SLAPP Suit Procedure)*, 138 N.H. 445, 446-447 (1994). Although the Maine Supreme Judicial Court noted Seventh and Fourteenth Amendment concerns generally about Maine's anti-SLAPP law in *Thurlow v. Nelson*, the Court again (like its sister courts) ruled upon its own state constitution. 2021 ME 58, *17 (2021).

Plaintiff's cherry-picking of precedent also failed to disclose that constitutional arguments against anti-SLAPP legislation have failed elsewhere.[5] *See, Bernardo v. Planned Parenthood Federation of*

---

[5] Plaintiff has burdened the Court through such tactics before, and been cautioned in this action against doing so previously. *June Decision*, at *10 n. 7 (noting plaintiff's selective disclosure of precedent and noting that "the Court expects greater care from counsel when advancing arguments in the future").

**160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN**
**Motion No. 003 004 007 008**

Page 5 of 14

*America*, 115 Cal. App. 4th 322, 360-361 (Cal. Ct. App, 4th Dist.), *cert. denied*, 2004 Cal. LEXIS 3097 (Cal.), *cert denied*, 543 U.S. 942 (2004) (finding that anti-SLAPP laws did not violate plaintiff's First Amendment rights); and *Klem v. Access Ins. Co.*, 17 Cal. App. 5th 595, 608 n. 6 (Cal. Ct. App., 4th Dist. 2017), *depublication denied*, 2018 Cal. LEXIS 1729 (2018) (collecting authorities and holding that "Anti-SLAPP is no impediment to redress of grievances or jury trial rights"). The Supreme Court of Nevada expressly cited and distinguished *Leiendecker* and *Davis* in upholding Nevada's anti-SLAPP law. *See, Taylor v. Colon*, 136 Nev. Adv. Rep. 50, *10-11 (2020). The District of Columbia Court of Appeals, while limiting certain anti-SLAPP procedures on home rule grounds, rejected plaintiff's constitutional arguments when presented with them. *See, Morgan Banks v. Hoffman*, Dkt No. 20-cv-0318, 2023 D.C. App. LEXIS 258, *34-37 (D.C. Sept. 7, 2023) (discussing constitutional objections to local anti-SLAPP law and finding that "[w]e need not pause long over these claims").

In addressing burden-enhancement and shifting in anti-SLAPP regulation, the *Morgan Banks* Court explained:

> We cannot agree that the Act's burden-shifting provision infringes on appellants' constitutional right to petition. The Supreme Court has explained that the right of access to the courts is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. The burden-shifting provision imposes on SLAPP plaintiffs the burden of showing that the complaint rests on more than unsupported claims that do not meet established legal standards, and of successfully rebutting any argument that the plaintiff could not prevail as a matter of law after allowing for the weighing of evidence and permissible inferences by the jury. A plaintiff who is shut out of court because it cannot meet that burden has not been denied its constitutional right to petition the courts.

*Morgan Banks*, at *35-36 (quotations and citations omitted).

While not specifically addressing this State's or the federal constitution, the Court of Appeals cited *Gertz* and others in noting that while the "actual malice standard need not apply to private figures," New York and other states "may define for themselves the appropriate standard of liability for those individuals." *Gottwald*, at *1 (quotations and citations omitted). As the Court previously discussed in the December Decision, "[t]he Court of Appeals has noted and affirmed the expansive language of our State constitutional guarantee of a free press and the consistent tradition in this State of providing the broadest possible protection to the sensitive role of gathering and disseminating news of public events," and that "we value speech and public participation knowing that the power may be misused, aware that the advocacy of some may be injurious or false, refusing to judge in individual cases whether debate itself

**160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN**
**Motion No.  003 004 007 008**

**Page 6 of 14**

would be good or bad." *December Decision*, at *5-6 (citations and quotations omitted). That New York has chosen to protect more speech under its state constitution and statutory law than might be required by the federal constitution is within New York's sovereign discretion, and "[a]bsent a debilitating constitutional flaw in the Act, this court must effectuate the common will expressed in the purpose of the legislation." *Swails v. State*, 263 Ga. 276, 276 (1993). Accordingly, the Court finds that Chapter 250 is permissible under both the state and federal constitutions.

### Defendants May Seek Attorney's Fees by Motion Pursuant to the Anti-SLAPP Law

Procedurally, plaintiff also objects to awarding fees and costs as part of an order dismissing this action, instead arguing that defendants cannot recover fees and costs without asserting their demand by answering the pleadings in this action with a counterclaim or filing a new action. (Mem of Law in Supp., at 6). Plaintiff relies upon a number of decisions from coordinate state and federal courts, and appellate decisions predating Chapter 250. Plaintiff's position is unavailing.

Pursuant to Civil Rights Law § 70-a(1)(a):

[C]osts and attorney's fees *shall be recovered* upon a demonstration, *including an adjudication pursuant to [CPLR 3211(g)]*...that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law. (emphasis added).

In contrast, "other compensatory damages *may* only be recovered *upon an additional demonstration* that the action involving public petition and participation was commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights," and "punitive damages *may* only be recovered *upon an additional demonstration* that the action involving public petition and participation was commenced or continued for the sole purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." Civil Rights Law § 70-a(1)(b) and (c). That is a marked, and presumably purposeful distinction crafted by the Legislature. While a demand for costs and fees is non-discretionary and may be premised solely upon a decision granting a CPLR 3211(g) motion to dismiss, the other *discretionary* compensatory and punitive damages claims available to deter SLAPP's require

160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN
Motion No.  003 004 007 008

Page 7 of 14

7 of 14

progressively higher levels of intent and motive that are more conducive to pleadings and litigation independent of the underlying CPLR 3211(g) motion to dismiss.[6]

Indeed – and troublingly contrary to plaintiff's argument – the First Department has addressed this issue in reinstating a motion for fees and costs in *Aristocrat Plastic Surgery P.C. v. Silva*, 206 A.D.3d 26, 29 (1st Dept. 2022).[7] There, as here, a defendant sought attorney's fees and costs as part of a CPLR 3211(g) motion, which was denied. While the gravamen of the First Department's decision in *Aristocrat Plastic Surgery* and the parties' arguments concerned whether Supreme Court correctly found that the claim at issue was subject to the Anti-SLAPP Law at all, the question of whether fees and costs could be sought by motion rather than a counterclaim or standalone pleading was posed by the parties and answered by the First Department. And the answer was yes. That the answer was short does not diminish its substance, as the First Department has "broad discretion in determining the level of detail that it provides," and "some issues and actions may require a greater level of detail than others, and discerning which case calls for a heightened level of detail is part of the subjective art of judging." *Charalabidis v. Elnagar*, 188 A.D.3d 44, 49 (2d Dept. 2020), *citing, NYCTL 2012-A Trust v. 1698 Lex Corp.*, 169 A.D.3d 577 (1st Dept. 2019). That point is further illustrated by the First Department having affirmed the very practice contemplated, citing itself in *Aristocrat Plastic Surgery*, nearly a year ago. *See, Golan v. Daily News, L.P.*, 214 A.D.3d 558, 559 (1st Dept. 2023). Plaintiff's problem is not that the First Department has not considered plaintiff's motion versus claim argument, but that the Appellate Division has considered it and does not agree with him.

Even assuming the question remains unsettled following *Aristocrat Plastic Surgery* or *Golan arguendo*, the answer would be the same on a fresh slate. In interpreting Chapter 250, the Court notes the Legislature's clear intent in crafting Chapter 250 as a vehicle through which defendants could expeditiously halt SLAPP claims and recover attorney's fees and costs without the burden of the same

---

[6] To be clear, nothing in this decision should be read as deciding that claims for non-cost-and-fee compensatory or punitive damages pursuant to Civil Rights Law § 70-a(1) cannot be awarded through motion practice, as that issue is not before the Court.

[7] As plaintiff expressly referenced (in his sur-reply, at 7) the substance of the briefing in *Aristocrat Plastic Surgery*, the Court took notice of the briefs. While plaintiff asserts that "the argument was raised perfunctorily and at the end of a long brief," this precise issue was one of Aristocrat Plastic Surgery's two counter-questions presented on appeal, and the subject of an entire point (Point 2 of 3, which the Court also notes is the middle rather than the end) in its opposition brief. That brief itself is available on NYSCEF, and published on Westlaw at 2022 WL 1125935. The defendant in *Aristocrat Plastic Surgery* replied to that argument with its own point (Point 2 of 4) in their reply brief, consuming over 4 pages of an 11-page reply, itself also available on NYSCEF. That is flatly not perfunctory.

**160699/2018 ISALY, SAMUEL D. vs. GARDE, DAMIAN**
**Motion No. 003 004 007 008**

**Page 8 of 14**

8 of 14

[* 8]

protracted litigation that Chapter 250 was designed to combat. The pre-Chapter 250 decisions plaintiff relies upon are unavailing because of the marked changes brought forth in Chapter 250, which the Legislature enacted in direct response to its disagreement with the courts' interpretations of the Anti-SLAPP Law, and post-hoc coordinate decisions to the contrary are unpersuasive.[8] *See*, Sponsor's Mem. of Sen. Hoylman-Sigal, Bill Jacket, Chapter 250, at 1; and *Aristocrat Plastic Surgery*, at 29 (citing the sponsoring memorandum in support of Chapter 250 and the "narrow interpretation by the courts" of the Anti-SLAPP Law prior to Chapter 250).

Even if, *arguendo*, the Court were to find (which it expressly does not) that Chapter 250 was ambiguous or inartful, that clear legislative intent would disfavor plaintiff's argument. *See, People v. Vespucci*, 144 A.D.2d 48, 55 (2d Dept. 1988), *affd*, 74 N.Y.2d 434, *cert. denied, sub nom. Corrigan v. New York*, 498 U.S. 814 (1990) (director of the Organized Crime Task Force could apply for eavesdropping warrants because "literal construction" of a statute is inappropriate when it "circumscribes its application," and "and fails to meaningfully incorporate as guiding criteria the policy objectives sought to be achieved by Congress in utilizing the statutory term") (internal quotations and citations omitted); *Turner v. Dept. of Finance*, 242 A.D.2d 146, 147 (1st Dept. 1998) (in interpreting local freedom of information statute, "the spirit and purpose of the act and the objects to be accomplished must be considered and given effect," and a literal reading of the text "should not be adhered to or suffered to defeat the general purpose and manifest policy intended to be promoted") (citation omitted); and *King v. Burwell*, 576 U.S. 473, 493 (2015) (cautioning that courts should not interpret "statutes to negate their own stated purposes" in interpreting the Patient Protection and Affordable Care Act), *quoting, New York State Dept. of Social Services v. Dublino*, 413 U.S. 405, 419-20 (1973).

Plaintiff's suggestion that the Legislature intended for those it intended to protect through an enhanced anti-SLAPP pre-answer motion to dismiss by requiring those same people to forgo the very pre-answer motion practice the Legislature expressly crafted for them in order to recover the enhanced penalties expressly crafted for them through protracted litigation the Legislature expressly intended to avoid, and that the Court should impose such a procedure, is illogical. The defendants in *Aristocrat Plastic Surgery* argued as much to the First Department, in stating that "Appellants did not file an answer denying the allegations of the Complaint and asserting a counterclaim for alleged damages," as "[s]uch a course

---

[8] *See, Chinese Am. Civ. Rights Coal. v. Trump*, 21-cv-4548, 2022 N.Y. Misc. LEXIS 82562, *15 (S.D.N.Y. May 4, 2022) (citing federal cases in denying motion for anti-SLAPP attorney's fees); and *315 W. 103 Enters. LLC v. Robbins*, 171 A.D.3d 466 (1st Dept. 2019).

**160699/2018 ISALY, SAMUEL D. vs. GARDE, DAMIAN**
**Motion No. 003 004 007 008**

**Page 9 of 14**

of conduct would have caused Appellants to engage in needless and expensive discovery—the very harm that the anti-SLAPP statutes are intended to eliminate." Reply Brief for Respondents, *Aristocrat Plastic Surgery*, at 6.

Plaintiff's reliance on federal cases denying fee applications by motion in favor of requiring defendants to pursue separate claims is particularly misplaced because of conflicting federal decisions regarding the applicability of state anti-SLAPP laws claims heard in federal court by diversity jurisdiction. *See*, Jankowski, *supra*. That the Legislature established a separate cause of action for anti-SLAPP remedies merely reflects the common will of New York that anti-SLAPP remedies be available in federal court (where awarding anti-SLAPP remedies through procedural rules may not carry through diversity procedure) as well state court. However, nothing in the text or intent of the Legislature precludes awarding fees by motion rather than a pled claim.

For proceedings in state court, to the extent the First Department has not already resolved this question in *Aristocrat Plastic Surgery* or *Golan*, plaintiff's argument remains unavailing.

### *Plaintiff Has Not Established Good Cause to Conduct Anti-SLAPP Discovery*

Pursuant to CPLR 3211(g)(3) (emphasis added), "[t]he court, on noticed motion and upon a showing by the nonmoving party, by affidavit or declaration under penalty of perjury that, for specified reasons, it *cannot present facts essential to justify its opposition*, may order that specified discovery be conducted," that "shall be limited to the issues raised in the motion to dismiss." Plaintiff has not met this burden.

In seeking discovery from defendant Burke, plaintiff relies solely on his attorney's affirmation as the basis of his purported necessity. That is deficient. The person in the best position to state what information plaintiff has concerning communications between plaintiff and defendant Burke is plaintiff himself, yet plaintiff has not offered an affidavit detailing his own personal knowledge in the instant motion. That alone is largely fatal to plaintiff's motion for discovery. *See, People v. Trump*, Index No. 452564/2022, 2023 N.Y. Misc. LEXIS 12067, *40 (Sup. Ct., New York Co. Oct. 30, 2023), *interim stay denied*, Case No. 2023-5460, slip op., at 1 (1st Dept. Nov. 2, 2023) (Mendez, J. in chambers) (noting lack of affidavit upon personal knowledge in denying motion to quash subpoena). Further, plaintiff does not offer an affidavit from anyone asserting that they conducted a search of materials under plaintiff's control regarding communications between plaintiff and defendant Burke at all.

**160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN**
**Motion No.  003 004 007 008**

**Page 10 of 14**

10 of 14

[* 10]

Indeed, a recent First Department decision plaintiff cited for a different point in his memoranda of law illustrates the issue: *Carey v. Carey*, 220 A.D.3d 477 (1st Dept. 2023). In words that might as well have been written at the outset for the instant motion:

> The court's denial of his CPLR 3211(g)(3) discovery motion was a provident exercise of its discretion. Plaintiff cites no authority—construing CPLR 3211(g)(3) or otherwise—to support his assertions that he was, by definition, entitled to discovery because the court found certain of the statements potentially defamatory, or because of the enormous burden the anti-SLAPP amendments place on defamation plaintiffs. CPLR 3211(g)(3) allows for discovery in connection with a motion to dismiss only if, for specified reasons, the nonmovant states, under oath, that it cannot present facts essential to justify its opposition, in which case the court may order that specified discovery be conducted notwithstanding the general stay of discovery otherwise effected by CPLR 3211(g). His statements that facts relevant to actual malice are, as a general matter, typically in the sole possession of a...defendant, fall short.

*Carey*, at 478-479 (internal quotation marks omitted).

In the absence of any proof, the Court cannot simply assume that discovery must be necessary to defeat an anti-SLAPP motion. Accordingly, the Court will deny plaintiff's motion for CPLR 3211(g)(3) discovery from defendant Burke.

### *Plaintiff Has Not Established a Substantial Basis in Fact and Law to Continue This Action*

In opposing a motion to dismiss pursuant to CPLR 3211(g), plaintiff must demonstrate "that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." Plaintiff has not done so.

Plaintiff's arguments that Chapter 250 does not apply to this action because it was commenced prior to the effective date of Chapter 250 do not offer a substantial basis in law as contemplated by the statute following the Court of Appeals' holding in *Gottwald* and the First Department's holdings affirming the Court in this action and denying reargument or leave to appeal (appeal of which the Court of Appeals also dismissed). For the same reasons, plaintiff's arguments do not offer a substantial argument to extend, modify, or reverse existing law.

Turning to the facts, plaintiff's argument is, at its essence, that defendant Burke told defendant Garde false stories of sexually harassing acts by plaintiff, and that Garde published them in an article. Plaintiff offered nothing in support of this in his unverified pleadings, and has continued to offer nothing (either by his word or through supporting statements or documents) in support through the course of three

**160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN**                                    **Page 11 of 14**
**Motion No.  003 004 007 008**

11 of 14

years of protracted motion practice in Motion Seq. Nos. 004 through 008. Plaintiff's unadorned assertions amount to nothing more than the very type of bare notice pleadings that Chapter 250 is specifically designed to foreclose. In considering the standard plaintiff must meet to survive defendants' motion to dismiss, the Court notes that the Second Circuit has affirmed dismissal of plaintiff's allegations in plaintiff's parallel litigation against Garde's publisher based on the federal plausibility standard, "rejecting Isaly's main argument that he was physically incapable of taking the actions attributed to him in the article — primarily, sending inappropriate emails — because he is quadriplegic and has limited use of his arms and fingers." *Isaly v. Boston Globe Media Partners, LLC*, 2023 U.S. App. LEXIS, at *2-3, *quoting, Isaly v. Boston Globe Media Partners, LLC*, Dkt. No. 21-1330-cv, 2022 U.S. App. LEXIS 1006, *1 (2d Cir. Jan. 13, 2022) (internal quotation marks omitted). As the Court found, and the First Department affirmed, plaintiff's claims against Garde failed even under the pre-Chapter 250 pleading standard. As plaintiff's claims are not even plausible, they cannot be substantial.

Instead, the continuation of this action after the Legislature's enactment of Chapter 250 has been a veritable archetype of the strategic litigation against public participation that the Legislature intended to curb in reforming the Anti-SLAPP Law. After the enactment of Chapter 250, plaintiff has noticed four motions before the Court (Motion Seq. Nos. 005 through 008) and vigorously litigated motions and cross-motions in two others (Motion Seq. Nos. 003 and 004), sought to amend his complaint again, noticed two appeals to the First Department, sought reargument from the First Department when he did not prevail there, and then sought relief from the Court of Appeals. That plaintiff has pursued this course of litigation on allegations that are not even plausible, let alone substantial, harkens directly to the Supreme Court, Westchester County's warning that "SLAPP suits function by forcing the target into the judicial arena where the SLAPP filer foists upon the target the expenses of a defense," and "[t]he longer the litigation can be stretched out, the more litigation that can be churned, the greater the expense that is inflicted and the closer the SLAPP filer moves to success." *Gordon v. Marrone*, 155 Misc. 2d 726, 736 (Sup. Ct., Westchester Co. 1992). Plaintiff has not met his burden in opposing defendants' motions, and the Court accordingly finds that plaintiff's claims lack a substantial basis pursuant to CPLR 3211(g).

160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN
Motion No.  003 004 007 008

Page 12 of 14

[* 12]

12 of 14

### *The Court Will Conduct a Hearing Regarding Defendants' Demands for Attorney's Fees*

"It is well established that courts have broad discretion in determining an award of attorney fees and costs," and that "New York courts often use the lodestar method, which is based on a reasonable hourly rate times a reasonable number of hours expended." *New York Times Co. v. New York Office of the Mayor*, 2023 NY Slip Op 32941(U), *3 (Sup. Ct., New York Co. 2023) (citations omitted).[9]  Courts applying the lodestar method have varied in considering fee applications on papers alone or through evidentiary hearings.  *Compare, e.g., I.O. v. New York City Dept. of Educ.*, Dkt. No. 20-cv-5061, 2021 U.S. Dist. LEXIS 122346, *1 (S.D.N.Y Jun. 29, 2021) (determining reasonable attorney's fees in IDEA litigation after trial); and *Matter of Infinity Q Diversified Alpha Fund Securities Litig.*, 2023 NY Slip Op 34527(U), *19 (declining to grant attorney's fees without hearing); *with, R.S. v. New York City Dept. of Educ.*, Dkt. No. 21-cv-2257, 2023 U.S. Dist. LEXIS 176654, *1 (S.D.N.Y. Sept. 29, 2023) (determining reasonable attorney's fees in IDEA litigation on papers); and *New York Times Co.*, at *1. (determining fees in FOIL litigation on papers).  If anything, New York courts have generally favored hearings rather than papers in determining fees, especially where there is sharp disagreement at the fore or on the horizon. *See, e.g., Matter of Infinity Q Diversified Alpha Fund Securities Litig., supra., citing, Sheridan v. Police Pension Fund*, 76 A.D.2d 800, 801-802 (1st Dept. 1980).  Based upon the litigation of this action thus far, *Matter of Infinity Q Diversified Alpha Fund Securities Litig.* is particularly instructive, and the Court will conduct a hearing to calculate reasonable attorney's fees and costs.

---

[9] The lodestar method is based upon a 12-factor test considering:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent: (7) time limitations imposed by the client or the circumstances; (8) the amount involved, and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*New York Times Co., supra.* (citations omitted).

**160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN**
**Motion No.  003 004 007 008**

**Page 13 of 14**

## *Conclusion*

The Court does not minimize plaintiff's incandescent disagreement with defendants' statements in the article. However, the common will of this State has considered and accepted that plaintiff's ill-feeling is an accepted consequence to preserving the marketplace of ideas. Plaintiff's path to relief from that policy decision runs through the Legislature in Albany, not a courthouse in New York City. Thus, he has not stated a claim for which relief can be granted and, given the nature of plaintiff's dismissed claims, defendants may now recover their costs and attorneys' fees due to plaintiff's continued litigation of this action.

Accordingly, it is hereby,

ORDERED that plaintiff's motion for discovery (Motion Seq. No. 008) is denied; and it is further

ORDERED that plaintiff's motion to lift or vacate the stay in this action (Motion Seq. No. 007) is granted to the extent set forth below; and it is further

ORDERED that the branches of defendants Damian Garde and Delilah Burke's motions to dismiss this action pursuant to CPLR 3211(g) as parts of Motion Seq. No. 003 and 004 are granted; and it is further

ORDERED that the parties shall contact the Court by email to SFC-Part55@nycourts.gov and bkrist@nycourts.gov regarding scheduling of a fees hearing.

This constitutes the Decision and Order of the Court.

| 3/18/2024 | | | | James d'Auguste, J.S.C. |
|---|---|---|---|---|
| DATE | | | | |

CHECK ONE: ☐ CASE DISPOSED ☒ NON-FINAL DISPOSITION

☐ GRANTED ☐ DENIED ☐ GRANTED IN PART ☒ OTHER

APPLICATION: ☐ SETTLE ORDER ☐ SUBMIT ORDER

CHECK IF APPROPRIATE: ☐ INCLUDES TRANSFER/REASSIGN ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

160699/2018  ISALY, SAMUEL D. vs. GARDE, DAMIAN
Motion No. 003 004 007 008

Page 14 of 14

14 of 14